**Ruby THRASHER, Plaintiff,**

v.

**IVAN LEONARD CHEVROLET, INC., Defendant.**

**No. CV 01–BU–1698–S.**

United States District Court, N.D. Alabama, Southern Division.

March 22, 2002.

■■■■■■■■■■

Steven P. Gregory, Esq., Dice & Gregory, LLC, Robbyn A. Gourdouze, Esq., Tuscaloosa, AL, for Plaintiff.

James E. Ferguson, III, Esq., Michael L. Jackson, Esq., Wallace, Jordan, Ratliff & Brandt, LLC, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION and ORDER

BUTTRAM, District Judge.

This case is presently pending before the Court on Defendant's motion for summary judgment. (Doc. 11) Plaintiff's complaint alleges Defendant discriminated against her in violation of Title VII on the basis of her pregnancy by reducing her ability to earn overtime compensation, harassing her, increasing scrutinizing her work, and discharging her. She contends that this conduct is also actionable as the tort of outrage under Alabama law. Finally, she alleges that Defendant breached its duty to train and supervise her manager Bill Karr, with regard to its sex discrimination policies. For the reasons set forth below, Defendant's motion for summary judgment (Doc. 11) is GRANTED IN PART and DENIED IN PART.

## I. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the Court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir.1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir.1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir.1995)).

## II. STATEMENT OF FACTS

In February 2000, Plaintiff Ruby Thrasher began working as a driver in the parts department of Defendant Ivan Leonard Chevrolet, Inc. Plaintiff was also given additional responsibilities and duties for "crossing tickets," thus allowing her to begin clocking in early in August 2000.

Drivers in the parts department usually clock in at 9:20 a.m. to begin work. The

drivers pick up their delivery tickets. Employees called "pullers" pull the parts from the warehouse and place them in bins for the drivers. After picking up their tickets, the drivers load their trucks. Warehouse employees load the very heavy parts, such as engines and transmissions.

Sometimes drivers would have to stop during their delivery routes to pick up parts they were supposed to deliver to customers along their route. Defendant also delivered parts sold by other dealerships to customers on their delivery routes as a courtesy to these customers. The drivers are expected to depart Ivan Leonard Chevrolet for deliveries no later than 11:10 a.m. or 11:15 a.m.

During the entire time that the drivers are picking up their invoices and loading their trucks, new orders are taken and new invoices are being prepared for the drivers. Parts to be delivered are commonly being pulled and provided to drivers as late as 11:15 a.m., the departure time.

When a driver fails to deliver a part this event is called "shorting." A shorting can occur because the part was not available at the departure time or for some other reason was not loaded on the truck. All drivers "short" parts.

On October 9, 2000, Plaintiff told Bill Karr, the manager of the parts department, that she was pregnant; whereupon, Karr told her that she was useless to him and that she would not be able to do her job.[1] Plaintiff told Karr that her pregnancy would not cause her to be unable to do her job and then left crying. She was so upset by the comments that she called her treating physician.

After Plaintiff told Karr she was pregnant, she noticed that Karr treated her in a hostile manner. He would barely speak to her, and when he did his tone was harsh and demeaning. Plaintiff complained to Tommy Busby, the drivers' supervisor, and he told her that there was nothing she could do about it. She became stressed and afraid that she would be terminated.

Plaintiff also complains that Karr told her that she would be required to clock out as soon as she returned from her run, which meant that she would be required to clock out before she had worked an eight hour shift. She contends that this change in her work schedule deprived her of the ability to earn overtime, although the week of the change Plaintiff's time card shows that she worked an hour and a half of overtime.

Karr told Plaintiff that she would have to bring a doctor's excuse for every time she missed work to go to the doctor during her pregnancy. Doctors' excuses were not required for other parts department employees for absences of a single day.

■ On October 17, 2000, exactly eight (8) days after Plaintiff told Karr she was pregnant, Karr fired Plaintiff. Terry Screws, the assistant manager of the parts department, asked Plaintiff to come into Karr's office. Plaintiff testified that she walked into the office, saw Karr sitting at his desk, and asked him if she was fired. Karr nodded his head in the affirmative. Plaintiff said to Karr, "You're firing me because I'm pregnant," to which Karr did not respond. Screws asked Plaintiff to leave quietly. Plaintiff picked up her check and COBRA information and quietly left the premises. She alleges devastation due to the subject events.

On October 20, 2002, Plaintiff went to the Emergency Room of Bessemer Carraway, where she learned that her baby no longer had a heartbeat. Her pregnancy terminated shortly thereafter.

Plaintiff contends that Defendant did not give her a reason for her termination at the time she was fired. Defendant con-

---

1. Karr denies making such a statement. *See* Doc. 13 ¶ 15.

tends that Karr did not have the opportunity to tell Plaintiff the reasons for her termination. However, the evidence is disputed by Plaintiff's testimony, which supports an inference that Karr did not attempt to tell Plaintiff why she was fired. For purposes of summary judgment, the Court assumes that Karr did not try to explain to Plaintiff why she was fired.

Defendant contends that it fired Plaintiff because of performance problems with her work. Defendant contends that it fired Plaintiff for performance problems, including shorting customers and not reporting the shortages. Doc. 12, p. 20; Doc. 13, Exh. J, exh. 3. Plaintiff acknowledges that she did "short" three customers on October 17, 2000, but she disputes that she did not call each and every time she was short.

Busby has never written up a male employee for shorting parts, although he admits that male employees do short parts. Screws has also never written up a male employee for shorting parts. Only female drivers were ever written up for shorting parts.

Defendant contends that it is their regular practice when employees start to have significant performance problems to write their problems down and document them ("write ups"). This is not a written policy and no records are kept on a regular basis of incidents of employees shorting parts. Karr testified that only "start writing them up when they [the employees] have serious problems." Doc. 16, Exh. G, p. 109. Karr decides what needs to be done when Busby and Screws "tell him" that an employee is short on a "frequent basis," which is once every two weeks or more. *Id.* There are no written, objective criteria to determine when such "write ups" are required, and there are no written, objective criteria for any type of evaluation of employees in the parts department.

Defendant contends that its supervisory employees in the parts department began to write up Plaintiff's performance in August 2000. However, some of the entries do not appear in sequential order and others are not dated. Moreover, Busby testified that he produced a write up for Plaintiff after she was terminated; he stated he could not remember whether he was asked to write her up or whether he decided to write her up on his own.

Defendant's notes indicate that it documented shortages beginning in August 2000 to September 19, 2000. On September 27, 2000, according to Busby's note, he told Plaintiff "that if she continued to short customers she would be dismissed." Doc. 16, Exh. J, exh. 1 p. 3. There is no indication that Plaintiff was short from September 19, 2000, until October 17, 2000, the date she was terminated.

## III. DISCUSSION

### A. PREGNANCY DISCRIMINATION

#### 1. Termination

The Court finds that there are disputed issues of fact with regard to Plaintiff's termination claim and that Defendant is not entitled to judgment as a matter of law. Therefore, Defendant's motion for summary judgment as to Plaintiff's claim that she was terminated because she was pregnant is DENIED.

#### 2. Terms & Conditions

 In her complaint, Plaintiff alleges that Defendant discriminated against her with regard to her terms and conditions of employment. Doc. 1, ¶¶ 20, 25. Specifically, Plaintiff contends that she was harassed, that her ability to earn overtime pay was eliminated,[2] and that her performance was monitored more closely. The

---

**2.** The Court notes that the record indicates that Karr's directive that Plaintiff clock out

Court finds that these incidents—occurring between October 9 and October 17, 2000—are not actionable adverse employment actions. *See Bass v. Board of County Com'rs, Orange County,* 256 F.3d 1095, 1118 (11th Cir.2001)(citing *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000)(citing *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998))).

The Court finds that there are no disputed issues of material fact and that Defendant is entitled to judgement as a matter of law as to Plaintiff's pregnancy discrimination claims related to the "terms and conditions" of her employment. Therefore, Defendant's motion for summary judgment as to Plaintiff's pregnancy discrimination claims related to the "terms and conditions" of her employment is GRANTED.

### B. OUTRAGE

 Plaintiff alleges that the "unlawful and discriminatory conduct by the management for the Defendant was so outrageous as to go beyond the bounds of decency." Doc. 1, ¶ 37.

> [T]he Supreme Court of Alabama has restricted the confines of this tort, allowing for recovery "only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993). To raise a jury issue on a claim for outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 1043 (citing *American Road Service Co. v. Inmon,* 394 So.2d 361 (1981)). The Supreme Court of Alabama has stated that "[b]y extreme we refer to conduct so outrageous in character and so ex-

treme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon,* 394 So.2d at 365.

Moreover, after citing more than twenty cases where a tort of outrage claim was not actionable, the court in *Thomas* outlined three limited circumstances where Alabama courts have allowed this claim to go to the jury:

> (1) cases having to do with wrongful conduct in the context of family burials ...; (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim ...; and (3) a case involving egregious sexual harassment ....

*Whaley v. Sony Magnetic Products, Inc. of America,* 894 F.Supp. 1517, 1525 (M.D.Ala. 1995). Whether conduct rises to the level sufficient to support a claim of outrage "may be made by the trial court as a matter of law." *Logan v. Sears, Roebuck & Co.,* 466 So.2d 121, 123 (Ala.1985).

 Plaintiff's allegation of discrimination with regard to overtime hours, scrutiny, and termination—which lasted a period of eight days—is not sufficiently egregious, as a matter of law, to support a cause of action for outrage under Alabama law. Therefore, Defendant's motion for summary judgment as to Plaintiff's outrage claim is GRANTED.

### C. NEGLIGENT SUPERVISION, RETENTION, & TRAINING

 Plaintiff's complaint alleges that Defendant negligently trained, supervised and retained Bill Karr, the manager of the parts department. Doc. 1, ¶ 29. She contends that Karr treated her differently—including "cutting back [her] hours" and firing her—after he learned she was preg-

early did not actually result in any lost pay

over the short period of time.

nant, and that Defendant failed to train and supervise Karr not to discriminate. *Id.* ¶¶ 30–32.

■ In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort. *Stevenson v. Precision Standard, Inc.,* 762 So.2d 820, 824 (Ala.1999)(citing *Big B, Inc. v. Cottingham,* 634 So.2d 999 (Ala.1993)). As Alabama does not recognize a common-law tort for sex discrimination in employment,[3] the Court finds that Plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort.

Therefore, Defendant's motion for summary judgment as to Plaintiff's negligent supervision, training, and retention claims is GRANTED.

### CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART. The Court finds no disputed issues of material fact and that Defendant is entitled to judgment as a matter of law as to Plaintiff's claims of "terms and conditions" pregnancy discrimination, outrage, and negligent supervision/training/retention. Such claims are hereby DISMISSED WITH PREJUDICE.

However, there are disputed issues of material fact with regard to Plaintiff's termination pregnancy discrimination claim. As to such claim, Defendant's motion for summary judgment is DENIED.

---

3. *See Machen v. Childersburg Bancorporation, Inc.,* 761 So.2d 981, 983 n. 1 (2000)("It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage. *See, e.g., Ex parte Atmore Community Hosp.,* 719 So.2d 1190 (Ala.1998); *Mardis v. Robbins Tire & Rubber Co.,* 669 So.2d 885 (Ala.1995); *Big B, Inc. v. Cotting-*

*ham,* 634 So.2d 999 (Ala.1993); *Potts v. BE & K Constr. Co.,* 604 So.2d 398 (Ala.1992).''); *see also Howard v. Wolff Broadcasting Corp.,* 611 So.2d 307, 313 (Ala.1992) (refusing to ''judicially create a wrongful discharge action'' based on sex discrimination), *cert. denied,* 507 U.S. 1031, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993).