MAIN, Justice.
Benjamin L. Little, the plaintiff below, appeals from a judgment of the Calhoun Circuit Court dismissing his tort-of-outrage claim against Gene Robinson. For the following reasons, we affirm the trial court’s judgment.

Procedural and Factual History

On March 31, 2009, Little sued Robinson in the Calhoun Circuit Court, asserting claims of assault and the tort of outrage.[1] Little stated in his complaint that he was one of two African-American members of the five members elected to serve on the Anniston City Council; Robinson was the mayor of Anniston and, by virtue of his position as mayor, was a voting member of the Anniston City Council. According to Little, beginning with the November 8, 2008, city-council meeting, the council meetings were marked with acrimony along racial lines, with Robinson, a Caucasian, voting in concert with the two Caucasian city-council members. Little further alleged in his complaint that, at one point,
“[t]he simmering unrest on the Anniston City Council boiled over finally, with [Robinson] and [Little] having a toe-to-toe screaming match in City Hall. [Robinson] and [Little] argued about the day’s council meeting agenda, but the dispute quickly escalated. Each man accused the other of looking ready to throw punches. The police were on standby. Whatever happened, [Robinson] and [Little] both said they were ready to stand their ground — especially if fists started flying. [Little] stated that [Robinson] ran over to him like he wanted to do something, and if he did he would take action from there. [Robinson] said if it had gotten ugly, ‘[w]e’d be having [Little’s] funeral today.’ The blowup resulted when the items which had been placed on the council’s agenda by [Little] were removed by Robinson, who thought they should be on the pre-meeting agenda for discussion, not a vote.”
In his complaint, Little characterized Robinson’s reference to his funeral as a threat to kill Little, and Little stated that his life had since been threatened “by unknown persons clearly encouraged since the public threat by [Robinson] to kill [Little].”
Little also alleged that,
“[o]n or about August 27, 2008, the Defendant Robinson stated to The Anni- *1170 ston Star, the local newspaper in Anni-ston, Alabama, that he had won the election for Mayor of Anniston earlier in the month because, ‘I bought into the black corruption in Anniston.’ Robinson named the Plaintiff, Curtis Ray,[2] as a part of this alleged black corruption and as a person who, for the payment of $ 1,700.00 by Robinson to him, passed out marked sample ballots at polling places and ‘assist[ed] people to the door.’ Robinson stated that the $1,700.00 came out of his election fund. Robinson characterized the success of his campaign and election as based on a corrupt payment to Ray. Robinson characterized the payment to Ray as, ‘I bought into the black corruption in An-niston. And it worked.’ ”
Little further alleged in his complaint that on March 24, 2009, Robinson, in his capacity as mayor, attended a meeting of the “League of the South.” Little asserted that the “League of the South” is a group that proposes that the State of Alabama secede from the United States of America and that the group has been labeled a “hate group” by the Southern Poverty Law Center. Little further claimed that Robinson “has regularly used hate speech against African Americans.”
Based on these allegations, Little contended:
“12. [Little] has been injured and damaged as a proximate result of [Robinson’s] aforesaid tortious conduct. [Robinson] has committed the tort of outrage against [Little]. [Robinson] is a racist who claims [Little] should be killed if he continues to oppose [Robinson] in Anniston City Council meetings. Because of [Robinson’s] public threat to kill [Little], and because of his position as mayor of Anniston, other persons presently unknown to [Little] have threatened to kill him following [Robinson’s] lead.
“13. [Robinson] has acted in a manner that is intolerable in a civilized society. By threatening to kill [Little], [Robinson] has severely interfered with [Little’s] ability to serve as an effective member of the Anniston City Council. [Little] has been held up to public ridicule and shame; he has been made fearful of his life; he has been made sick, sore and caused to suffer great mental anguish; and he has been otherwise injured and damaged as aforesaid. [Little] claims entitlement to money damages in an amount awarded by the Court to [Little].”
On May 13, 2009, Robinson filed a motion to dismiss Little’s complaint for failure to state a claim upon which relief could be granted. See Rule 12(b)(6), Ala. R.Civ.P. The trial court ordered Robinson to file a brief in support of the motion to dismiss and ordered Little to file a brief opposing the motion to dismiss.
On June 5, 2009, Robinson filed a brief setting out his understanding of the applicable law and asserting that even if Little’s factual allegations were taken as true and the allegations viewed in the light most favorable to Little, the allegations did not satisfy the elements of the tort of outrage. Specifically, Robinson averred that the comment regarding Little’s funeral made during their argument in city hall was an “off-hand remark” that did not constitute a threat to kill Little and that, even if it *1171 were construed as a threat, Robinson’s actions did not amount to the type of extreme, egregious actions that would satisfy the elements of the tort of outrage.
On August 18, 2009, Little filed his response to Robinson’s motion to dismiss. Little argued that the few examples of outrageous conduct referenced in Robinson’s brief and in our caselaw did not constitute an exhaustive or exclusive list of conduct that would support a tort-of-outrage claim. Rather, Little argued, outrage was subjective and the allegations in his complaint were sufficient to support a tort-of-outrage claim.
The trial court scheduled a hearing on Robinson’s motion to dismiss for October 26, 2009.[3] On December 4, 2009, the trial court issued an order granting Robinson’s motion to dismiss Little’s assault and tort-of-outrage claims, finding, in pertinent part:
“This matter came before the Court on a Motion to Dismiss filed by [Robinson] in this case. The Court has reviewed the briefs filed by each party and considered the oral arguments offered by each side as well. The Court has applied the legal standard for deciding whether to grant the Motion to Dismiss by viewing the allegations in the complaint in the pleader’s favor and attempting to determine whether the pleader could prove any set of circumstances that would entitle him to relief by accepting the allegations of the complaint as true.
[[Image here]]
“Regarding Count 1 and the tort of outrage, the Court finds that tort of outrage is extremely limited by the courts of Alabama. Conduct must be extreme and outrageous; it must also be such conduct that would cause severe distress. It is only recognized in the most exceptional of circumstances. The conduct must be so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society. American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980). The Court fails to find that the statement in this case meets that standard. Additionally, [Little] asserts in his response to [Robinson’s] Motion to Dismiss that this statement which is the subject of the claim should be reviewed while keeping in mind that [Little] is a member of the city council and [Robinson] is the mayor. [Little] submits no legal support for this additional consideration that [he] requests, nor is the Court aware of any such legal standard that would apply under these circumstances. Therefore, the Court finds that [Little] has failed to state a claim upon which relief can be granted and Count I is DISMISSED with Prejudice.”
(Capitalization in original.) This appeal followed.

Standard of Review

This Court’s review of a trial court’s dismissal of a party’s claims on the basis of Rule 12(b)(6) is de novo.
“On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6)[, Ala.R.Civ.P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle *1172 [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). See also DGB, LLC v. Hinds, 55 So.3d 218 (Ala.2010); and McDole v. Alfa Mut. Ins. Co., 875 So.2d 279 (Ala.2003).

Analysis

This Court first recognized the tort of outrage in 1980, in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1980). In Inmon this Court recognized the tort proposed by the Restatement (Second) of Torts § 46 (1948), holding:
“[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement[ (Second) of Torts § 46], at 78 [ (1948) ]. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra at 72.”
394 So.2d at 365. The Court noted m Inmon that the tort of outrage
“does not recognize recovery for ‘mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.’ Comment, Restatement, supra, at 73. The principle applies only to unprivileged, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress.”
394 So.2d at 364-65. As this Court has since held:
“The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, Whitt v. Hulsey, 519 So.2d 901 (Ala.1987); (2) barbaric methods employed to coerce an insurance settlement, National Sec. Fire & Cas. Co. v. Bowen, 447 So.2d 133 (Ala.1983); and (3) egregious sexual harassment, Busby v. Truswal Sys. Corp., 551 So.2d 322 (Ala.1989). See also Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law, § 23.0 (2d ed.1996). In order to recover, a plaintiff must demonstrate that the defendant’s conduct ‘(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.’ Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala.1990) (citing American Road Service Co. v. Inmon [, 394 So.2d 361 (Ala.1980) ]).”
Potts v. Hayes, 771 So.2d 462, 465 (Ala. 2000). That is not to say, however, that *1173 the tort of outrage is viable in only the three circumstances noted in Potts. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy’s mother to counsel the boy concerning his stress over his parents’ divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy’s drug addiction. See O’Rear v. B.H., 69 So.3d 106 (Ala.2011). It is clear, however, that the tort of outrage is viable only when the conduct is “ ‘so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.’” Horne v. TGM Assocs., L.P., 56 So.3d 615, 631 (Ala.2010) (quoting Inmon, 394 So.2d at 365).
Even accepting the allegations in Little’s complaint as true and viewing them in the light most favorable to him, we cannot say that Little could establish a tort-of-outrage claim. Simply put, as alleged in Little’s pleadings, Robinson’s conduct did not constitute the type of extreme and outrageous conduct required to support a tort-of-outrage claim. Robinson’s “funeral” comment, as alleged by Little, was not a threat to kill Little, presently or prospectively, nor was it an invitation for others to kill Little. Rather, taken in context and at face value, it was at most a comment that Robinson would have killed Little during the confrontation at city hall if things had escalated during that confrontation.[4]
Similarly, although Little averred in his complaint that Robinson voted along racial lines in matters before the city council, votes in bodies whose members are elected are often not unanimous, and those votes are frequently cast along certain socioeconomic, religious, cultural, racial, regional, party, or other identifiable line. Nothing in Little’s allegation suggests that Robinson acted in an extreme or outrageous manner in so voting.
As to Little’s allegation that Robinson “regularly engaged in hate speech against African Americans” and had attended a meeting of an organization identified as a hate group by the Southern Poverty Law Center, nothing in the record indicates the nature, extent, context, or egregiousness of Robinson’s alleged racial comments.
With regard to Robinson’s statement to a newspaper reporter that he had been elected mayor of Anniston because he had “bought into the black corruption in Anni-ston,” we cannot say from the context provided by Little in the record before this Court that that comment satisfied the stringent requirements for the tort of outrage.

Conclusion

Although we do not endorse the type of comments allegedly made by the defendant in this case, we conclude that the allegations in Little’s complaint, whether viewed individually or cumulatively, simply do not amount to “conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement! (Second) of Torts § 46,] at 72 [ (1948) ].” Inmon, 394 So.2d at 365. Accordingly, we affirm the trial court’s judgment insofar as it dismisses Little’s tort-of-outrage claim.
AFFIRMED.
COBB, C.J., and WOODALL, BOLIN, and MURDOCK, JJ., concur.

. Little does not challenge on appeal the propriety of the trial court’s dismissal of his assault claim. Therefore, we do not set out any facts or engage in any discussion regarding that claim.

. The record does not contain any other mention of an individual named "Ray,” nor do the briefs disclose or clarify the identity of the person to whom this allegation refers. Little is the only plaintiff in the action. It is unclear whether this reference identifies a third party, or whether the references to "Ray” are meant to be "Little.” Regardless, this ambiguity does not change our conclusion in this case.

. A transcript of that hearing was not included in the record submitted to this Court.

. We note that the confrontation was one in which, from all indications, including Little’s own pleadings, Little was an active and willing participant.