IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 EASTERN DIVISION 

JULIA MCCREIGHT AND ) 
REBECCA WESTER, ) 
 ) 
 Plaintiffs, ) 
 ) CASE NO. 2:19-cv-865-ALB 
v. ) 
 ) 
AUBURNBANK; AUBURN ) 
NATIONAL BANCORPORATION, ) 
INC.; AND MICHAEL KING, ) 
 ) 
 Defendants. ) 
 MEMORANDUM OPINION AND ORDER 
This matter comes before the Court on motion by AuburnBank, Auburn 
National Bancorporation Inc., and Michael King (“Defendants”) to dismiss the 
claims brought against them by Julia McCreight and Rebecca Wester (“Plaintiffs”). 
(Doc. 17 at 4-11). Although Plaintiffs allege seven total counts in their complaint, 
Defendants move to dismiss only Counts IV (intentional infliction of emotional 
distress), V (invasion of privacy), VI (tortious interference with contractual 
relations), and VII (negligent and wanton hiring). (Doc. 13 at 27-38). Upon 
consideration, Defendants’ motion is due to be GRANTED in part and DENIED in 
part. 
 STANDARD 
When considering a motion to dismiss, the court accepts all facts alleged in 

the complaint as true and draws all reasonable inferences in the plaintiff’s favor. 
Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). There are two 
questions a court must answer before dismissing a complaint. First, the court must 

ask whether there are allegations that are no more than conclusions. If there are, 
they are discarded. Second, the court must ask whether there are any remaining 
factual allegations which, if true, could plausibly give rise to a claim for relief. If 
there are none, the complaint will be dismissed. Bell Atlantic Corp. v. Twombly, 550 

U.S. 544, 570 (2007). 
 BACKGROUND 
The following allegations are taken from the complaint and will be taken as 

true for the purposes of this order. 
Julia McCreight and Rebecca Wester are women over the age of sixty who 
were each employed by AuburnBank in Auburn, Alabama as mortgage originators 
for over twenty years. Within the last two years, both women were terminated. 

Plaintiffs allege that their termination was due to the bigotry of Michael King, a 
Senior Vice President of Mortgage Lending, whom AuburnBank hired in late 2017. 
Plaintiffs allege that King subjected them to treatment that he did not subject 

younger employees to, including arbitrary threats to “fire them on the spot” and 
openly spoke about his preference to hire young mortgage originators. In November 
of 2017, McCreight complained about this behavior to AuburnBank’s human 

resources department and the bank’s president, but no investigation took place. 
Plaintiffs further allege that the bank hired Jamie McConnell, Barry Bryant 
and Blake Otwell as loan originators. At the time of hiring, Jamie McConnell was 

unqualified to work as a loan originator. Otwell and Bryant were subjected to no 
discipline despite disastrous loan errors and low origination numbers. McCreight 
was the most profitable originator working for the bank, with over $17 million in 
loans originated in 2017 alone. McCreight was fired in May of 2018 on the grounds 

that a customer was upset that his loan had been cancelled by the underwriters. 
McCreight avers that she was not responsible for this error and that it was a pretext 
for King to fire her for being old. McCreight was subsequently escorted from the 

building by Auburn police officers. 
Wester alleges that the human resource department told her that she was too 
slow, was making too many typographical errors, and couldn’t keep up with 
incoming documents despite receiving consistently excellent performance reviews 

for the preceding 20 years. Wester was placed on probation twice with no warning 
and repeatedly accused of working too slowly. Wester asked for a lateral transfer 
and was told that she would receive one, only to be fired later that week. The reason 

given for the firing was that she had failed to verify a customer’s employment prior 
to closing the loan. However, McCreight had taken two pre-approved and scheduled 
vacation days to have medical testing completed and had asked two other employees 

to complete this task. They failed to do so. 
 DISCUSSION 
Plaintiffs’ allegations are insufficient to make out a claim on two of the four 

counts at issue. Plaintiffs do not allege behavior that was sufficiently outrageous 
and have failed to plead interference in a contractual relationship. 
I. Defendants’ conduct was insufficiently outrageous. 
Plaintiffs allege that they were subjected to conduct so outrageous that it 

qualifies as an intentional infliction of emotional distress. Defendants cite Little v. 
Robinson, 72 So. 3d 1168, 1171-72 (Ala. 2011) for the proposition that this tort has 
been tightly circumscribed by the Supreme Court of Alabama. Plaintiffs respond 

that the tort has been recognized in the employment context and cite Lees v. Sea 
Breeze Health Center, 391 F. Supp. 2d 1103, 1107 (S.D. Ala. 2005) for the 
proposition that the true test of whether something is outrageous is whether it was 
done in contravention of public policy. 

In Alabama, the tort of intentional infliction of emotional distress is referred 
to as “outrage.” There is a tripartite test to determine whether something outrageous 

has occurred. “The plaintiff must prove (1) that the defendant’s conduct was 
intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused 
emotional distress so severe that no reasonable person could be expected to endure 
it.” Ex parte Crawford & Co., 693 So. 2d 458, 460 (Ala. 1997). 

The Supreme Court of Alabama has made it clear that “outrage” is a high bar, 
and the only consistently recognized categories of actionable conduct exist “in the 

family-burial context…[when] barbaric methods [are] employed to coerce an 
insurance settlement…and [in cases of] egregious sexual harassment.” Little 72 So. 
3d at 1172. In Little the court opined that, although the tort is not explicitly cabined 

to those three categories, the action in question needs to be at least as outrage-
inducing as “a family physician who, when asked by a teenage boy’s mother to 
counsel the boy concerning his stress over his parents’ divorce, instead began 
exchanging addictive prescription drugs for homosexual sex for a number of years, 

resulting in the boy’s drug addiction.” Id. (quoting facts from O'Rear v. B.H., 69 
So.3d 106 (Ala. 2011)). The bottom line is that this tort is viable “only when the 
conduct is so outrageous in character and so extreme in degree as to go beyond all 

possible bounds of decency, and to be regarded as atrocious and utterly intolerable 
in a civilized society.” Id. 

Attempts to further refine this test in the context of employee termination have 
resulted in a two-step process: the termination must be “for a reason which 
contravenes public policy…and…accompanied with the sound of fury.” Harrell v. 
Reynolds Metals Co., 495 So. 2d 1381, 1387 (Ala. 1986); see also Ritchey v. S. 
Nuclear Operating Co., Inc., 2008 WL 11342662, at *2 (N.D. Ala. Feb. 14, 2008) 

(acknowledging the test from Harrell). However, this test has occasionally enjoyed 
a somewhat flexible application. The Southern District of Alabama has held in two 
instances that any pattern of discriminatory conduct that violates public policy—and 

this Court is unable to think of any pattern that would not—is cognizable as an 
outrage claim if it culminates in termination. See Hall v. Infirmary Health Sys., 2007 
WL 772560, at *7 (S.D. Ala. Mar. 8, 2007) (outrage claim cognizable for a firing 
over taking medical leave to receive seven abdominal surgeries over an eight-month 

period); see also Lees, 391 F. Supp. 2d at 1108 (outrage claim cognizable where an 
employee was fired for her desire to join the military). In these cases, the court 
collapsed the two-step test into one, holding that “the violation of public policy 
furnishes the requisite ‘sound of fury’ to accompany the termination.”1 Id. In the 

1 The cases cited to substantiate this proposition are inapposite because they fall within one of the 
Supreme Court of Alabama’s approved categories. In Rice v. United Ins. Co. of America, 465 
So.2d 1100, 1102 (Ala.1984), a pattern of invidious sex-based discrimination culminated in a firing 
and caused a miscarriage. In Cunningham v. Dabbs, 703 So.2d 979, 983 (Ala.Civ.App.1997), a 
woman was sexually harassed in horrifying ways for a period of months before the harasser fired 
the woman on the day of her wedding as a punishment for getting married. These cases do not 
show a willingness on the part of the Supreme Court of Alabama to sanction a broad view of the 
tort of outrage. 
Southern District’s view, the pattern of misconduct need not even be discrimination 
based on an immutable characteristic, just a “violation of public policy.” 

This Court declines to follow the Southern District of Alabama in holding that 
any pattern of discrimination can support a claim of outrage. To do so would be to 

recognize a freestanding common-law anti-discrimination claim, which is 
inconsistent with how the Alabama state courts have treated the tort of outrage. 
Unlike the Southern District, the Supreme Court of Alabama has taken special care 

to accentuate the extreme nature of the tort of outrage. See Gibbs v. Aetna Cas. & 
Sur. Co., 604 So. 2d 414, 415 (Ala. 1992) (holding that Continental Casualty 
Insurance Co. v. McDonald, 567 So.2d 1208, 1209 (Ala.1990), a case in which a 
company cruelly and intentionally withheld payment for pain treatment that they 

knew they owed in an attempt to press a nominal settlement, “has come to represent 
the minimum threshold that a defendant must cross in order to commit outrageous 
conduct”). The Southern District’s approach, on the other hand, means there is no 

“garden variety” discrimination claim because every discrimination claim would 
come with an automatic outrage claim. See Ritchey v. S. Nuclear Operating Co., 
Inc., 2008 WL 11342662, at *2 (N.D. Ala. Feb. 14, 2008) (holding that “[w]hether 
the discharge is actionable may tuenl (sic) on whether it was the culmination of a 

protracted pattern of discrimination in violation of public policy and accompanied 
by the ‘sound of fury’ (which may be actionable) or whether Plaintiff's claim is more 
of a ‘garden variety’ discrimination claim (which is not actionable)”). And this 
result would directly contradict the requirement of the Supreme Court of Alabama 

that the tort be cognizable “only in the most egregious circumstances.” Thomas v. 
BSE Indus. Contractors, Inc., 624 So. 2d 1041, 1044 (Ala. 1993). See also Thrasher 
v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1319 (N.D. Ala. 2002) 

(holding that a woman did not have a claim of outrage where she was harassed, 
scrutinized, and then fired on the basis of her pregnancy.); see also Whaley v. Sony 
Magnetic Prod., Inc. of Am., 894 F. Supp. 1517, 1525 (M.D. Ala. 1995) (holding 
that failure to promote as a result of age discrimination does not support a claim of 

outrage). 
In the instant case, Plaintiffs have failed to identify a superlative element that 

makes this case about more than garden variety workplace discrimination. Both 
Wester and McCreight allege patterns of discriminatory conduct in the work place; 
McCreight was repeatedly told that the bank was only interested in hiring young 

people because of their connections and Wester was repeatedly called “slow.” 
However, the firings in this case, while they may have been dramatic, are not akin 
to the firing in Cunningham, nor do they rise to the level of the truly shocking and 
outrageous conduct in O’Rear and McDonald. The Court has little difficulty in 

concluding that the Supreme Court of Alabama would reverse a plaintiff’s jury 
verdict on an outrage claim based on the facts as alleged in this complaint. As a 
result, Plaintiffs’ outrage claims are due to be dismissed. 

II. Plaintiffs have adequately plead a claim of false-light invasion of 
 privacy. 
Plaintiffs allege that Defendants invaded their privacy because Wester had her 
belongings rummaged through in front of her co-workers, McCreight was escorted 
out by police, and both were placed in an unfavorable light because of Defendants’ 

false accusations. Defendants respond that to establish an invasion of privacy, 
Plaintiffs must allege intrusion and publication. However, Defendants incorrectly 
interpret Plaintiffs’ false light invasion of privacy claim, see Regions Bank v. Plott, 

897 So. 2d 239, 244 (Ala. 2004), as an intrusion upon seclusion invasion of privacy 
claim, see Austin v. Mac-Lean Fogg Co., 999 F. Supp. 2d 1254, 1263 (N.D. Ala. 
2014). In Alabama, these two torts are distinct. 

In order to prove a false light invasion of privacy claim, Plaintiff must show 
that Defendants (1) publicized (2) false information about another that (3) would be 

highly offensive to the reasonable person and (4) either knew or acted in reckless 
disregard as to the falsity of the information. See Regions Bank v. Plott, 897 So. 2d 
239, 244 (Ala. 2004). In our case, Wester and McCreight have certainly alleged the 
latter three elements; they say that even though they did nothing wrong and their 

employers knew that, they were fired in such a way as to create the impression that 
they had been investigated and found to have committed misdeeds. The question is 
whether the Defendants effectively publicized the information. Plaintiff Wester 

asserts that her belongings were rummaged through by her supervisor before she was 
led out of the building and that lies about her misconduct were published to her 
business contacts. Plaintiff McCreight asserts that she was escorted out of the 

building by police and lies about her misconduct were published to her business 
contacts. 

Although publicity is a close question, Plaintiffs allege that the information 
was disseminated widely enough to be considered publicized. For tortious invasion 
of privacy, the Alabama Supreme Court has adopted the language of the Second 
Restatement of Torts, which provides in relevant part that, “one who gives publicity 

to a matter concerning the private life of another is subject to liability to the other 
for invasion of his privacy…” Ex parte Birmingham News, Inc., 778 So. 2d 814, 818 
(Ala. 2000). To achieve publicity, the statement must “reach the public.” Id. It is 

not enough to expose information to a single person or a small group of persons. It 
must be “sufficient to give publicity within the meaning of the term.” Id. (giving 
examples including publication in a newspaper, magazine, or handbill, or broadcast 
over a radio). 
The communication at issue was primarily to Plaintiffs’ coworkers. The 
Supreme Court of Alabama has held repeatedly that informing several coworkers is 

not sufficient. See Rosen v. Montgomery Surgical Ctr., 825 So. 2d 735, 736 (Ala. 
2001) (informing a coworker who then informed two others was insufficient for 
publication.); Butler v. Town of Argo, 871 So. 2d 1, 14 (Ala. 2003) (discussion of 

issue with five or six people in the office of the city clerk was insufficient to 
constitute publication.) Indeed, informing the entire office is insufficient for 
publication. See Pouncy v. Vulcan Materials Co., 920 F. Supp. 1566, 1573 (N.D. 
Ala. 1996) (holding “there is no evidence that the comments allegedly made by Ms. 

Alford and Mr. Nelson were made outside the confines of Vulcan, therefore, Pouncy 
could not have been subjected to publicity…”). Alabama law even immunizes 
communications among employees from being considered publication when they 

occur “in the course of transacting the company’s business and in the proper scope 
of the employee’s duties.” Schrimsher v. Liberty Nat. Life Ins. Co., 655 So. 2d 986, 
988 (Ala. 1995). However, here Defendants went further. Defendants misled each 
of Plaintiffs’ “peers, employees and business contacts,” that they had been 

discharged for misconduct. See Doc. 13 ¶173, 180. 
At this early stage of the case, Plaintiffs have sufficiently alleged a false-light 

invasion of privacy claim. Although Defendants were allegedly aware that Plaintiffs 
committed no misconduct, they are alleged to have published statements about said 
misconduct to the Auburn business community. Accordingly, the invasion of 
privacy claim will survive. 

III. Defendants are not strangers to their contracts with Plaintiffs and 
 have threatened no protectable relationships of Plaintiffs. 

Plaintiff McCreight has alleged that Defendants interfered in her contractual 
relations with AuburnBank, her colleagues, her business contacts, and AuburnBank 
management. See Doc. 20 at 12. They did this by having police escort McCreight 
from the building and by informing their business contacts of her firing and escort. 
Defendants respond that McCreight has not alleged any protectable business 

relationship in which they could have interfered. “The Eleventh Circuit has 
recognized that under Alabama law, the tort of interference with a business 
relationship includes the following elements: (1) the existence of a protected 
business relationship; (2) of which the defendant knew; (3) to which the defendant 

was a stranger; (4) with which the defendant intentionally interfered; and (5) 
damage.” Cochran v. Five Points Temporaries, LLC, 907 F. Supp. 2d 1260, 1273 
(N.D. Ala. 2012). 

Defendants are correct; Plaintiff has failed to allege any specific contractual 
relationship that Defendants could have interfered with. Any Plaintiff alleging 

tortious interference must “identify the existence a (sic) business relationship worthy 
of the law’s protection.” Glennon v. Rosenblum, 325 F. Supp. 3d 1255, 1267 (N.D. 
Ala. 2018). Nobody has a “legally protectable relationship with every potential 
participant in their local market.” Id. To that end, it is necessary that Plaintiff allege 

a specific relationship that Defendants have interfered with. Plaintiff alleges that 
“Defendants informed Ms. McCreight’s peers, employees and business contacts that 
she had been discharged for misconduct…to keep others from employing Ms. 

McCreight.” See Doc. 13 at ¶186. Not only does she fail to allege any pre-existing 
contractual relationship but Plaintiff implicitly admits that any such business was 
yet to be consummated. 
Of course, while there were no discernible business relationships between 

McCreight and her friends or business contacts, there were absolutely business 
relationships between her and AuburnBank. But her claim that AuburnBank, among 
other Defendants, interfered with her business relationship with AuburnBank fails 

for a different reason. “It is plaintiff’s burden to plead ‘that the defendant was a 
stranger to the protected business relationship with which the defendant interfered.’” 
Cochran 907 F. Supp. 2d 1273 (internal citation omitted). The Alabama Supreme 
Court has held that “a person with a direct economic interest in the contract is not a 

stranger to the contract. Parties to an interwoven contractual arrangement are not 
liable for tortious interference with any of the contracts or business relationships.” 
Id. (internal citation omitted). 
Plaintiff’s claim that Defendants interfered in her contractual relationships 
with her friends and business contacts fails because she has not informed the Court 

of the specifics of those relationships. Her claim that Defendants interfered with her 
contractual relationships with Defendants fails because Auburn National 
Bancorporation and AuburnBank cannot be strangers to contracts with themselves. 

Mike King, an employee with control over the relationship, similarly cannot be such 
a stranger. See Harris v. ACCC Ins. Co., 2016 WL 6986637, at *5 (M.D. Ala. Nov. 
28, 2016). 

IV. Plaintiffs’ invasion of privacy claim serves as the basis for 
 negligent supervision and training. 
Plaintiffs allege that Defendants are liable for negligent supervision and 
training. Plaintiffs base this liability on the assertion that Defendants had a duty to 
provide a safe work environment and, despite adequate notice of discriminatory 

actions, they failed to take action to train and discipline Michael King. Defendants 
respond that in Alabama there must be an underlying common-law tort for a party 
to adequately plead negligent supervision and training; a federal discrimination 
claim is not enough. 

Defendants are correct. In Alabama, a plaintiff “cannot maintain an action for 
negligent supervision, training, and/or retention based upon conduct that is 

employment discrimination but does not support a common-law tort.” Thrasher v. 
Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002). In 
Thrasher the discrimination alleged was gender-based and the court noted that 

Alabama recognizes no common-law gender discrimination tort. The instant case is 
different from Thrasher because Alabama has a law against age discrimination, the 
Alabama Age Discrimination in Employment Act, that has been found to support a 

claim of negligent training and supervision. See Minard v. Sam's E., Inc., 2018 WL 
6392200, at *4 (N.D. Ala. Dec. 6, 2018); King v. CVS Caremark Corp., 2 F. Supp. 
3d 1252, 1269, n.8 (N.D. Ala. 2014). This Alabama statute, as well as Plaintiffs’ 
legitimate invasion of privacy claims, serve as a valid basis for a claim of negligent 

supervision and training. 

V. Justice does not require that Plaintiff be given leave to submit a 
 second amended complaint. 
Plaintiffs ask leave to amend their complaint a second time. They argue that 
this should be granted because (1) the case is in its initial stages, (2) Defendants have 
not yet answered the complaint, (3) the parties have not engaged in discovery, (4) 
and Plaintiffs’ counsel has not yet received pertinent EEOC investigative files. See 
Doc. 20 at 14. Defendants argue that Plaintiffs should not be given another chance 

to amend. Defendants point out that, although Plaintiffs had an opportunity to 
amend their complaint in response to the motion to dismiss, and did in fact amend, 
they did not change anything that would be responsive to the motion to dismiss and 
instead added another party whose claims are similarly deficient. The Court’s 
decision to allow or deny a second chance to amend a complaint is equitable. See 

Reeder v. Chitwood, 595 F. App'x 890, 896 (11th Cir. 2014). 
The Court is inclined to agree with Defendants. Federal Rule of Civil 

Procedure 15(a)(2) states that district courts “should freely give leave [to amend a 
complaint] when justice so requires.” The Court is not convinced that notions of 
justice support Plaintiffs’ thinking. Of the reasons that Plaintiffs have given to 

amend the complaint, none are even relevant to motions practice at the dismissal 
stage. In essence, Plaintiffs’ four reasons are an argument that they will not be able 
to submit a satisfactory complaint until the Court has let them conduct discovery. 
That is not how pleading works. It is not the responsibility of the EEOC or 

Defendants to adequately plead Plaintiffs’ case for them. 

Accordingly, the Court will not give Plaintiffs a blank check to further amend 
their complaint in response to this order. However, if Plaintiffs file a motion to make 
a specific amendment, then the Court will evaluate that future hypothetical motion 
in due course. 
 CONCLUSION 

In light of the foregoing reasoning, Defendants motion to dismiss is due to be 
and is GRANTED as to counts IV and VI and DENIED as to counts V and VII. 
DONE and ORDERED this 4th day of March 2020. 

 /s/ Andrew L. Brasher 
 ANDREW L. BRASHER 
 UNITED STATES DISTRICT JUDGE