[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 40 
This is an appeal from judgments rendered on jury verdicts in favor of Larry Standridge and against Green Tree Acceptance, Inc. ("Green Tree") for $600,000; and for El-Jay's, Inc., d/b/a Bonanza Mobile Homes ("Bonanza") and against Green Tree for $150,000. The disputes between these parties arose from the sale of a mobile home to Standridge by Bonanza, and the repossession of that mobile home by Green Tree. Standridge filed an action against Green Tree alleging violations of the Federal Truth-in-Lending Act,[1] fraud, conversion, and outrage. Bonanza filed a cross-claim against Green Tree alleging fraud, and the jury returned verdicts in favor of Standridge and Bonanza. Green Tree appeals, asserting that the trial judge improperly denied its motions for directed verdict, j.n.o.v., and new trial, and improperly awarded attorney fees to Bonanza.
The facts in this case are extremely complicated, and some issues raised by Green Tree were not properly preserved at the trial level.[2] Therefore, only those facts necessary to resolve the issues that are properly before this Court will be set out. Standridge purchased a mobile home from Bonanza on August 25, 1985. As part of that transaction, Standridge signed a sales contract that contained, inter alia, the following provisions:
 "9. Insurance. I will keep the manufactured home insured against such risks and in such amounts as you may reasonably require with an insurance company satisfactory to you. . . . If I fail to obtain or maintain insurance . . . you may (but are not required to) purchase such insurance. I will immediately repay you for any amounts you spend in purchasing the insurance, plus interest at the rate in this contract.[3]
 "10. Default. I will be in default if: . . . (ii) I do not keep any of my promises under this contract . . . [Y]ou will give me notice of the default except when I voluntarily surrender or abandon the mobile home. I will have the right to cure during the notice period. If I do not cure the default, you may do either or both of the following at the end of the notice period:
 "(a) Acceleration of Payments: You may require me to immediately repay the entire remaining balance of the *Page 41 
contract less the refund described in the Prepayment Refund paragraph.
 "(b) Repossession: You can repossess the manufactured home. Once you get possession of the manufactured home, you will sell it. If the amount from the sale, after expenses, is less than what I owe you, I will pay you the difference. If there is any property left in the manufactured home when you repossess, you will hold it for 20 days. I must claim it within 20 days or you will dispose of it." (Emphasis added.)
The contract also authorized the assignment of the contract to Green Tree. Under the terms of that assignment Green Tree would acquire all of Bonanza's rights in the event of default, as well as a limited right of recourse against Bonanza. Soon after the sale to Standridge, Bonanza assigned the contract to Green Tree.
The relationship between the parties was uneventful until November 19, 1986. At that time Bob Franklin, a Green Tree employee, notified Standridge that his physical damage insurance coverage had expired and had been renewed by Green Tree. Franklin demanded that Standridge immediately reimburse Green Tree for the premium payment it had made, a total of$139.34. Standridge requested written verification of the payment, and Franklin agreed to provide that verification. Green Tree did not provide that verification, but, over the next two days, Franklin continued to call Standridge at his office demanding immediate payment.
On Friday, November 21, 1986, Franklin called Standridge at his office at 5:00 p.m. and demanded payment by the end of the business day. Standridge told Franklin that he was unable to leave his office, but would give Franklin a check if he could come by Standridge's office. Franklin refused that proposal and the men became involved in a heated discussion. According to Standridge, Franklin insulted him, threatened to ruin his credit and cause him to lose his job, and finally ordered Standridge to either pay the insurance premium immediately or surrender possession of the mobile home. Standridge maintained that Franklin also threatened to dispose of Standridge's possessions in the trailer if it was repossessed. Standridge asked Franklin to repeat his demand to surrender the trailer, and then told Franklin he would comply with that demand. Over the following weekend Standridge removed his belongings from the mobile home and returned the keys to the trailer and his payment book to Green Tree on the following Monday. Although Green Tree maintained that the returning of the keys and the payment book showed that Standridge voluntarily surrendered the mobile home, Standridge denied that his surrender was voluntary. Standridge contended that he left his mobile home only because he believed Franklin could order him to do so.
Although the sales contract provided for notice of default before repossession, that provision did not state a time period for the notice. Ruth Vaughn, a Bonanza employee, testified that Green Tree ordinarily mailed owners that were in default a "thirty-day letter," alerting the owner that he was in default and informing him that he had 30 days to cure the default and prevent repossession. After those 30 days had expired and the mobile home had been repossessed, Green Tree would mail out a "ten-day letter," notifying the owner that he had 10 days in which to redeem his mobile home and thereby avoid a private sale. Although Green Tree did mail a "thirty-day letter" to Standridge, it was incorrectly addressed and Standridge did not receive it until some time in December. That letter, dated November 24, 1986, informed Standridge that he had 30 days from the postmarked date of the notice to cure his default.
During the last week of November 1986, Green Tree, through Bonanza, began to take affirmative steps to sell Standridge's trailer to Melissa McQueen. Those steps were initiated well before the expiration of the notice period set out in the "thirty-day letter." Standridge testified that McQueen began moving her belongings into the trailer on December 24, 1986, before he received any written notice from Green Tree. McQueen left a deposit with Bonanza and *Page 42 
signed a sales contract on the trailer on December 31, 1986, well before the redemption period set out in Standridge's "ten day letter" had expired. At some point between Christmas 1986, and January 1, 1987, the mobile home was removed from Standridge's property and moved onto property chosen by McQueen. Although Green Tree does not dispute that these events occurred within the stated time periods, it contends that despite McQueen's possession and occupation of the mobile home, the sale was not finalized until February 10, 1987, when McQueen's final down payment was received.
On May 5, 1987, Standridge filed a complaint against Green Tree in the Circuit Court of Montgomery County, alleging fraud, conversion, and outrage. Green Tree then filed a third-party complaint against Bonanza, alleging that any liability incurred by Green Tree due to the repossession and sale was due to the actions of Bonanza. Bonanza responded with a counterclaim against Green Tree, alleging that all of the actions it took with relation to Standridge's trailer were taken at Green Tree's instruction. Bonanza maintained that Green Tree fraudulently informed its employees that the repossession and sale of Standridge's mobile home would not violate the notice provisions in the sales contract. After the close of the evidence, Green Tree moved for directed verdicts against Standridge and Bonanza. Those motions were denied. The jury then returned the following verdicts against Green Tree:
1. In favor of Standridge on the fraud claim, assessing damages of $300,000;
2. In favor of Standridge on the outrage claim, assessing damages of $275,000;
3. In favor of Standridge on the conversion claim, assessing damages of $25,000; and
4. In favor of Bonanza on the fraud claim, assessing damages of $150,000.
Bonanza also filed a claim for attorney fees under the Alabama Litigation Accountability Act, Ala. Code 1975, §12-19-270 et seq. The trial court determined that Green Tree's claim against Bonanza was without substantial justification and awarded attorney fees in the amount of $2,500 to Bonanza. It is from that award and the judgments on the verdicts listed above that Green Tree appeals.
 Denial of Green Tree's Motion for Directed Verdict
Green Tree argues that the trial court erred in refusing to direct a verdict in its favor on all of the counts in both Standridge's complaint and Bonanza's complaint. It contends that neither Standridge nor Bonanza produced a scintilla of evidence to support its claims.[4] Under the "scintilla" evidence rule, a directed verdict is proper only where there is not a scintilla of evidence to support the essential elements of the plaintiff's claim, or where there is no disputed issue of fact upon which reasonable men can differ. Southern United Life Ins.Co. v. Gregory, 508 So.2d 247, 250 (Ala. 1987). To determine the propriety of the denial of Green Tree's motion for directed verdict, each claim, with the exception of Standridge's outrage claim, will be examined.
The elements of fraud are (1) a misrepresentation (2) of a material existing fact, (3) relied upon by the plaintiff, (4) who was damaged as a proximate result of the alleged misrepresentation. Earnest v. Pritchett-Moore, Inc.,401 So.2d 752, 754 (Ala. 1981). Green Tree argues that Stand ridge failed to prove reliance on any alleged misrepresentation and failed to prove damages as a result of reliance. After reviewing the record, this Court finds that there was sufficient evidence to allow the jury to determine that Green Tree made misrepresentations of existing fact. That evidence includes testimony by Standridge, Franklin, and employees of Standridge, that Franklin ordered Standridge to surrender possession of the mobile home immediately. That demand was inconsistent with *Page 43 
Green Tree's usual practice of giving owners 30 days to cure defaults and was in contradiction to the "thirty-day letter" mailed to Standridge the following Monday. Standridge testified that he believed that Franklin possessed the authority to order him to immediately surrender the mobile home, and, therefore, that in reliance on that demand he vacated the mobile home. There was evidence that Franklin threatened to ruin his credit rating if he did not deliver the trailer. Because the contract did not specify a notice period, the contract did not contradict Standridge's belief as to Franklin's authority. In addition, there was evidence that indicated that Green Tree began taking steps to sell the mobile home to McQueen before the 30-day notice period had expired. Also, Green Tree allowed McQueen to take possession of the mobile home before January 1, 1987, despite giving Standridge notice that he had until January 8, 1987, to redeem his mobile home. Standridge was aware of McQueen's possession of the mobile home and testified that Green Tree's actions led him to believe that he would not be allowed to cure his default or redeem his mobile home. Also, there was evidence indicating that Green Tree altered the dates on McQueen's sale contract to make it appear that the sale occurred after the redemption period.
Standridge also testified that he suffered damage as a result of Green Tree's misrepresentations. He testified that he had to pay storage fees for his possessions and was forced to pay increased rent and that improvements he made to the mobile home were lost or rendered valueless after the repossession. A motion for a directed verdict tests the sufficiency of the evidence presented and should be denied if there is any conflict in the evidence for the jury to decide. McLarty v.Wright, 56 Ala. App. 346, 321 So.2d 687, 689 (Ala.Civ.App. 1975). Green Tree's motion for a directed verdict on the fraud count was properly denied.
This Court has defined conversion as "[t]he wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has a general or special title to the property or the immediate right to possession." All state Enterprises, Inc. v. Alexander,484 So.2d 375, 377-78 (Ala. 1985). In the instant case more than a scintilla of evidence was presented to show that Green Tree wrongfully deprived Standridge of possession of his mobile home and put McQueen into possession of it before Standridge's rights to cure or redeem had expired, in defiance of his immediate right to possession. Therefore, Green Tree's motion for directed verdict on the conversion claim was properly denied.
Green Tree also argues that the trial court erred by denying its motion for a directed verdict on Bonanza's fraud claim. In its complaint against Green Tree, Bonanza alleged that Green Tree fraudulently represented to Bonanza that it had the right to sell Standridge's mobile home and instructed Bonanza to have McQueen sign the sales contract prepared by Green Tree before Standridge's redemption period had expired. In its brief to this Court, Green Tree does not deny making those misrepresentations to Bonanza, but contends that Bonanza has failed to prove any damage as a result of those misrepresentations.
At trial, there was evidence that indicated that Green Tree promised to pay Bonanza all the expenses it incurred in the repossession and sale of Standridge's mobile home. Bonanza apparently relied on these representations when it repossessed and sold Standridge's mobile home at Green Tree's direction. Despite Green Tree's representations, Bonanza was never reimbursed for these expenses. This Court finds sufficient evidence concerning all of the elements of Bonanza's fraud claim and concludes that that claim was properly submitted to the jury. Although the actual damages sustained by Bonanza may have been modest, even nominal damages will support an award of punitive damages under the proper circumstances. CoastalConcrete Co. v. Patterson, 503 So.2d 824, 830 (Ala. 1987). In addition, it is not necessary that an award of punitive damages bear any particular mathematical relationship *Page 44 
to actual damages. U-Haul Co. of Alabama v. Long,382 So.2d 545; 548 (Ala. 1980).
Green Tree also filed a motion for j.n.o.v. following the return of the jury's verdicts. This motion was denied. Motions for directed verdict and j.n.o.v. both test the sufficiency of the evidence and are reviewed under the same standard.Morgan v. South Central Bell Tel. Co., 466 So.2d 107, 113 (Ala. 1985). Granting a motion for j.n.o.v. says, without weighing the credibility of the evidence, that there can be but one reasonable conclusion as to the proper judgment. Hanson v.Couch, 360 So.2d 942 (Ala. 1978). In the instant case, the evidence concerning Standridge's fraud and conversion claims and Bonanza's fraud claim would not support such a conclusion.Therefore, the trial court's denial of Green Tree's motion for directed verdict and its decision to leave the jury's verdicts undisturbed were proper.
 Standridge's Outrage Claim
Green Tree maintains that the trial court committed reversible error by denying its motions for directed verdict and j.n.o.v., on Standridge's claim for intentional infliction of emotional distress, or outrage. In his complaint, Standridge alleged that Green Tree's actions in ordering him to leave his mobile home; threatening to destroy his credit; threatening to cause him to lose his job; and filing a report on the repossession with a credit bureau, thereby damaging his credit rating, were extreme, unconscionable, and outrageous, and caused him to suffer severe emotional distress. The jury heard testimony by Standridge and other witnesses concerning the embarrassment and other distress suffered by Standridge and returned a verdict on the outrage claim of $275,000.
The verdict of a jury is presumed to be correct and will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it is wrong and unjust. Shelby County v. Oldham, 264 Ala. 626, 89 So.2d 106, 107 (1956). However, the burden on a plaintiff in a case such as this is a heavy one, Surrency v.Harbison, 489 So.2d 1097, 1105 (Ala. 1986), and this Court cannot affirm a verdict if the plaintiff has failed to prove all of the elements of his claim. This Court set out the elements of the tort of outrage in American Road Service Co. v.Inmon, 394 So.2d 361 (Ala. 1981): For a plaintiff to recover under that tort, he must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. Inmon, supra, at 365. In order to support a cause of action for the tort of outrage, the conduct complained of must be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society.McIsaac v. WZEW-FM Corp., 495 So.2d 649, 651 (Ala. 1986).
The cases in which this Court has held that the evidence presented a jury question on the tort of outrage have involved conduct of a more egregious nature than that present in the instant case. This Court, in a recently released opinion,Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala. 1989), remarked, obiter dictum, that evidence of a plant supervisor's repeated sexual advances, lewd remarks, and patently offensive behavior towards his female employees would be sufficient to present a question for the jury.[5] 551 So.2d at 324. In Whitt v.Hulsey, 519 So.2d 901 (Ala. 1987), the reckless desecration of a family cemetery by an adjacent landowner was held to be sufficiently outrageous to present a jury question and to support an award of punitive damages. 519 So.2d at 906. InLevite Undertakers Co. v. Griggs, 495 So.2d 63 (Ala. 1986), an undertaker's *Page 45 
misrepresentation of the condition of the remains of the plaintiff's husband, coupled with the wrongful retention of those remains in an attempt to force payment of funeral expenses, justified an award of punitive damages. 495 So.2d at 64-65. In National Security Fire Casualty Co. v. Bowen,447 So.2d 133 (Ala. 1983) the use of threats and assaultive behavior by agents of the defendant, in an attempt to force the plaintiff to drop a claim against the defendant, was held to constitute outrageous conduct. 447 So.2d at 141. Finally, inCates v. Taylor, 428 So.2d 637 (Ala. 1983), the defendants, 30 minutes before a planned burial, withdrew permission for the plaintiffs to use a cemetery plot to bury their father. That conduct supported a cause of action for the tort of outrage.428 So.2d at 640.
The conduct complained of by Standridge can be divided into three categories: (1) the threatening, abusive, and insulting language used by Robert Franklin, Green Tree's employee, during his final conversation with Standridge, (2) the wrongful threat of repossession and subsequent sale of his mobile home, and (3) Green Tree's filing of an adverse report with a credit bureau and the resulting embarrassment and credit problems suffered by Standridge, including the payment of increased interest rates to secure a later loan. Although this Court can not condone oppressive collection practices like those used by Green Tree, they do not rise to the level of extreme behavior contemplated by this Court when it recognized the tort of outrage. In addition, Standridge failed to demonstrate that Green Tree's actions caused him to suffer emotional distress of a degree more severe than a reasonable person could be expected to endure. Inmon, supra, at 365. Because Standridge failed to meet his burden of proof, the trial court's denial of Green Tree's motion for j.n.o.v, on the outrage claim was not proper. Therefore, that portion of the judgment is reversed, and the trial court is instructed to enter a judgment in Green Tree's favor on that claim.
 Denial of Green Tree's Motion for New Trial
Green Tree contends that the trial court erred in denying its motion for a new trial. Green Tree maintains that a new trial was warranted due to the large amount of the verdicts and the purportedly evident passion and prejudice of the jury, and because the verdicts were against the great weight of the evidence.
This Court has required that trial courts set out in the record their reasons for interfering with a jury verdict, or for refusing to do so, on grounds of excessiveness of damages.Hammond v. City of Gadsden, 493 So.2d 1374, 1379 (Ala. 1986). In its order denying Green Tree's motion for a new trial, the trial court fully complied with that requirement. The court stated that it observed the demeanor of the witnesses, parties, and lawyers and saw no evidence of misconduct that would have biased the jury against Green Tree. The trial court also stated that it was convinced that the jury reasonably considered all of the evidence presented and applied the law as given in the jury charges in reaching its verdicts. The trial court was convinced that those verdicts were not tainted by bias, prejudice, or emotion. Finally, the trial court stated that the size of the verdicts was not shocking to the conscience or excessive as a matter of law and were not so large as to unduly burden Green Tree.
The trial court also examined the totality of the evidence produced by the parties. The court found that sufficient evidence was produced to support the verdicts of the jury and the court therefore refused to interfere with those verdicts. The decision to grant or to deny a motion for new trial rests within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error. Hill v.Cherry, 379 So.2d 590 (Ala. 1980). After reviewing the record, this Court finds no indication of such abuse or error. Green Tree's motion for a new trial was properly denied. *Page 46 
Green Tree also argues that a new trial was required because the verdict forms did not distinguish between compensatory damages and punitive damages. Ala. Code 1975, § 6-11-1 (Supp. 1988), does require that verdict forms in tort actions and breach of warranty actions be itemized, distinguishing between past, future, and punitive damages. Although there is no dispute that the jury did not utilize itemized verdict forms, there is no evidence that this error was brought to the attention of the trial court. Green Tree was given permission, after the jury had retired, to read objections into the record concerning its motion for directed verdict, apparently for the sake of recording its assertions of grounds for directed verdict that had already been made off the record. At that time, Green Tree's lawyer made an objection to the verdict forms. That objection exceeded the scope of the permission granted by the trial court and was made outside the presence of the trial judge and the opposing lawyers. The trial court had no notice of this objection and therefore had no opportunity to rule on it. This Court will not put a trial court in error for failure to rule on a matter that, according to the record, was neither presented to nor decided by it. Defore v. Bourjois,Inc., 268 Ala. 228, 105 So.2d 846, 847 (1958).
 Award of Attorney Fees
Green Tree's final contention is that the trial court erred in granting Bonanza's motion for attorney fees, filed pursuant to the Alabama Litigation Accountability Act, Ala. Code 1975, § 12-19-270 et seq. (Supp. 1988). The trial court granted that motion because it found Green Tree's complaint against Bonanza to be groundless, in fact and in law, and unsubstantiated by any evidence.
Green Tree argues that its claim against Bonanza was meritorious, but that through honest error it failed to introduce evidence to support its claim. Green Tree argues that the trial court, after the close of the evidence, refused to reopen Green Tree's case to allow it to put on testimony to support its complaint against Bonanza, and that this refusal was an abuse of discretion. The testimony Green Tree wished to offer was that of an employee, Wayne Tidwell. Green Tree failed to offer any explanation, other than honest error, for its failure to offer this evidence during its case-in-chief. The decision of whether to reopen a case for additional evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. State v.Alabama Public Service Comm'n, 293 Ala. 553, 307 So.2d 521
(1975). After reviewing the record, this Court has found no such abuse. Therefore, the trial court's award of attorney fees will not be disturbed.
After a careful examination of the record, this Court finds that the trial court committed only one reversible error: the failure to grant Green Tree's motion for j.n.o.v, on Standridge's outrage claim. Therefore, the trial court's judgment on that claim is reversed, and that court is instructed on remand to enter a judgment in Green Tree's favor on that claim. The rest of the trial court's judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] Standridge's Truth-in-Lending Act claim was later withdrawn.
[2] This Court notes that Green Tree's trial counsel and appellate counsel are not the same.
[3] Standridge's down payment included a $300 payment for physical damage insurance coverage for one year. There was no provision in the sales contract for renewal of that coverage.
[4] This action was commenced on May 5, 1987, prior to the abolition of the "scintilla" evidence rule. Ala. Code 1975, §12-21-12 (Supp. 1988).
[5] Due to the death of the plant supervisor in Busby, and this Court's unwillingness to hold his employer liable for actions clearly outside the scope of his employment, the question of whether the plant supervisor's conduct constituted outrage was not considered. Busby, supra, at 327-28.