ROBERTSON, Presiding Judge.
Barbara Evans sued General Motors Acceptance Corporation (GMAC), James Johnson, Johnny Hayes, and Rod Ramsay (collectively known as “defendants”), seeking compensatory and punitive damages resulting from certain efforts by the defendants to collect an alleged deficiency in one of Evans’s monthly car payments. Evans’s original complaint contained four counts alleging wanton misconduct, invasion of privacy, harassment, and outrage on the part of the defendants.
Later, Evans amended her original complaint by requesting increased compensatory and punitive damages as to her first three counts and by seeking interest as to all four counts. Also, a fifth count was added in which Evans’s husband, Sammy Evans, sought compensatory and punitive damages from the defendants for the loss of consortium and services of his wife.
The defendants then filed a motion for summary judgment as to the Evans’s claims of invasion of privacy, harassment, and outrage. After considering briefs and argument of counsel, the trial court granted summary judgment as to the harassment and outrage claims, but denied summary judgment as to the claim of invasion of privacy.
Following a jury trial on the remaining counts, verdicts were rendered in favor of Barbara Evans and against GMAC in the amount of $4,000 as compensatory damages, and in favor of the defendants and against Sammy Evans on his loss of consortium claim.
After the trial court’s entry of judgment pursuant to the jury’s verdicts, the Evans’s filed a motion for additur or, alternatively, a motion for new trial. The trial court denied the Evans’s motion and both Barbara Evans and Sammy Evans filed an appeal. However, on appeal the brief fails to cite any authority or make any argument on the loss of consortium claim; therefore, the only issues before us pertain to Barbara Evans.
The record reveals the following background information: In 1987, Barbara Evans purchased a new Oldsmobile automobile and financed her purchase through GMAC in Mobile. Her payments were $382.32 per month for three years. For the March 1, 1989, payment, Evans mailed a money order for her full payment amount to a GMAC payment office in North Suburban, Illinois. The money order was received in a timely fashion, but Evans’s account was only credited with a payment of $282.32. Around March 20, 1989, Evans received a late notice from GMAC concerning the $100 deficiency which actually was due to GMAC’s posting error. Also, a $5 late fee was posted to Evans’s account. Then, Evans mailed a copy of her money order along with the late notice back to the *412 GMAC office in Illinois in an attempt to show that her account actually was in a current condition. For approximately the next 2 months, Evans received a total of about 5 late notices and 5 phone calls from the defendants concerning her supposedly deficient account. This suit was filed in June 1989.
First, Evans argues that it was reversible error for the trial court to admit defendants’ Exhibit # 6 into evidence in its entirety, over her objections, without first excising, covering, and/or deleting any and all language that she claims amounted to an offer of compromise.
Defendants’ Exhibit # 6 is a letter from counsel for Evans to defendant and GMAC employee James Johnson concerning initial contacts GMAC had with Barbara Evans. The letter is dated April 26, 1989, and contains the following language which Evans argues is an offer of compromise:
“2. You must deliver to the letterhead address hereof a check made payable to this firm in the amount of $75, which said sum represents the legal fees I have assessed to my client in my representations of her to this point in this matter.”
On appeal, Evans contends that offers of compromise are inadmissible. She declares that her intention in using the letter in her opening statement and at trial was only to show notice to the defendants and as a warning that the defendants’ contacts with her must cease. Instead, she argues that the exhibit was offered into evidence by defendants and used by counsel for the defendants to belittle her claims. Furthermore, Evans argues that the letter’s admission impacted negatively on the jury’s estimation of damages, and, therefore, she should be granted a new trial.
We first note that a trial court is given wide discretion as to its rulings on the admissibility of evidence. Williams v. Hughes Moving & Storage Co., 578 So.2d 1281 (Ala.1991). We also note that the general rule concerning offers of compromise is that they are inadmissible in a civil action. Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987).
The record reflects, however, that immediately after this suit was filed, the trial court issued a pre-trial order concerning evidence expected to be used by the parties at trial. The order states in part that “[a]ll such documents, evidence, and exhibits shall be deemed authenticated and admitted into evidence without further proof unless written objections are made to the court within a reasonable time thereafter and before trial specifying the grounds of objection.”
In filing a “Compliance With Pretrial Order,” Evans attached the letter in question in its entirety, making no effort to excise the unwanted portions or to alert the trial court as to its possible inadmissible content. Matters stipulated to in a pre-trial order are binding on the parties and control the subsequent course of the trial. Osborne Truck Lines, Inc. v. Langston, 454 So.2d 1317 (Ala.1984). Also, according to the record, Evans’s attorney was the first to mention the letter when he did so in his opening statement. Accordingly, we hold that the trial court did not abuse its discretion in admitting defendants’ Exhibit # 6 into evidence in its entirety.
Second, Evans argues that it was reversible error for the trial court to admit defendants’ Exhibit # 11 into evidence, over her objections, in that it was a self-serving declaration prepared by defendant James Johnson.
Defendants’ Exhibit #11, an internal memo written by Johnson, concerned a phone conversation Johnson had with Evans about her account. The phone conversation with her took place on April 6, 1989, and the memo was dated June 23, 1989, which was the date of service of the complaint on Johnson and one day after the date of service of the complaint on GMAC. According to Evans, the memo was intended to convey the idea that the defendants had gone out of their way to research and terminate the wrongful collection activities against her.
Evans, depending primarily on Mallory v. Mallory, 272 Ala. 464, 131 So.2d 703 (1961), argues that the memo was not ad *413 missible unless it was part of the res ges-tae. Evans also cites Mallory for the proposition that Exhibit #11 should have been excluded because it was a self-serving declaration. Evans again argues on appeal that the jury’s estimation of damages was negatively impacted by that exhibit and that she should be awarded a new trial.
As to Evans’s argument that Exhibit # 11 was inadmissible because of it being a self-serving declaration, we note that McElroy’s Alabama Evidence states that there is no rule as such preventing that type of declaration being introduced into evidence. Instead, a self-serving declaration, if inadmissible, is so because of some other evidentiary rule. Charles W. Gamble, McElroy’s Alabama Evidence, § 242.02 (4th Ed.1991). (Citing Mallory.)
Therefore, Exhibit # 11 was not inadmissible simply because it may have been self-serving. Instead, it could have been admitted into evidence as a business entry in accordance with Rule 44(h), A.R.Civ.P. In such a case, the circumstances surrounding the making of the memo could have been shown to affect its weight, but not its admissibility. Rule 44(h). Consequently, we hold that the trial court did not abuse its discretion in admitting defendants’ Exhibit #11 into evidence.
Finally, Evans argues that the jury’s verdict and the award of damages were contrary to the great weight and preponderance of the evidence, and, therefore, she should have been granted a new trial. Although acknowledging that the assessment of damages is within the province of the jury, Evans specifically contends that the jury ignored undisputed testimony as to the amount of compensatory damages and that, therefore, the trial court erred by denying her posttrial motion for additur or a new trial.
Evans testified that prior to the March 1989, initial incident with GMAC, she had enjoyed generally good health and an active lifestyle. She did admit, however, that she had visited a Dr. Terrell prior to March 1989, because of having occasional headaches accompanied by nausea and vomiting. Evans testified that Dr. Terrell performed a brain scan on her, and the results were normal. He then prescribed medication for Evans’s headaches and later referred her to a Dr. Syverson, who performed a brain wave on Evans. Evans testified that the results again were normal, and her headaches improved with medicine and exercise. All of these appointments were prior to March 1989.
Evans testified that her life changed drastically after March 1989. Specifically, she testified that she suffered from stress, severe pain, fatigue, and restless nights due to the collection attempts by the defendants. Evans testified that in May 1989, she again went to see Dr. Terrell.
By deposition, Dr. Terrell testified that prior to March 1989, he treated Evans for pain in her joints, and headaches which led to vomiting. Dr. Terrell testified that, after March 1989, Evans came to him complaining of joint pain, stress, restlessness, and lack of energy. Dr. Terrell then referred her to Dr. Greer.
Dr. Greer, an internist and rheumatologist, testified by deposition that he first saw Evans in November 1990, and that she was suffering from moderately severe pain in various muscles and joints. Following examinations designed to eliminate certain possible problems with Evans, Dr. Greer diagnosed her with having fibromyalgia. He testified that this is a non-terminal condition (found mostly in women) of diffuse musculoskeletal pain in many areas of the body and is associated with stiffness, headaches, difficulty in performing activities, and poor sleep habits. Dr. Greer further testified that fibromyalgia is precipitated by mental or physical stress, and is treatable in Evans’s case with sleep medication and exercise. Dr. Greer testified that Evans’s medical history indicated past problems with headaches and nausea, and that there was some indication of such problems with Evans's mother.
Both Drs. Greer and Terrell testified that, in their opinions, the defendants’ collection attempts did not cause fibromyalgia in Evans, but they did exacerbate the preexisting condition. Concerning Evans’s *414 prognosis, Dr. Greer testified that it is unknown and depends on her response to ongoing treatment. He testified that the costs of future medications could be between $50 and $100 per month, depending on when, if ever, this condition ceases. Dr. Terrell testified that these costs could be between $60 and $75 per month. Both doctors indicated, however, that these were variable figures, and these costs would be eliminated if the patient’s fibromyalgia becomes dormant or is resolved. In fact, Dr. Greer testified that Evans already is responding to a much lower dose of medication than most of his patients.
Evans argues that, since she had a remaining life expectancy of 33 years at the time of trial, the jury should have awarded her more compensatory damages based on the projected monthly medical expenses as estimated by Drs. Greer and Terrell. Specifically, she contends that the range of compensatory damages should be between $19,800 (33 years X 12 months x $50 per month) and $39,600 (33 years X 12 months X $100 per month).
Our supreme court has held that:
“ ‘[t]he assessment of damages is a matter within the discretion of the jury in the first instance, and in the discretion of the trial judge on a motion for a new trial.’ A jury verdict is presumed to be correct and should not be set aside on the ground of inadequacy of damages unless the amount is so inadequate as to plainly indicate that the verdict was the result of passion, bias, prejudice, mistake, or improper motive.” (Citations omitted.)
Anderson v. Clark, 548 So.2d 1022, 1022-23 (Ala.1989).
Based on our review of the record, we cannot say that the jury’s verdict was so inadequate as to indicate passion, bias, prejudice, mistake, or improper motive. Although Evans contends that the future medical expenses were undisputed, we reiterate that both doctors classified these expenses as being variable, depending, of course, on her response to treatment. We also note that both doctors testified that the defendants’ activities did not cause Evans’s fibromyalgia, but only exacerbated it.
The decision to either grant or deny a motion for new trial rests within the trial court’s sound discretion, and its decision will not be disturbed on appeal unless a legal right was abused and the record plainly and palpably shows that the trial court erred. Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38 (Ala.1990). We cannot find that the trial court abused its discretion or plainly or palpably erred in denying Evans’s motion for new trial. Its decision, therefore, is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.