Rel: December 20, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2023-0304
_____

### 21st Mortgage Corporation

### v.

### Raymond Robinson

### Appeal from Baldwin Circuit Court
### (CV-19-900109)

SHAW, Justice.

21st Mortgage Corporation ("21st Mortgage"), the defendant below,

appeals from a judgment on a jury verdict in favor of Raymond Robinson

("Robinson"), the plaintiff below, on Robinson's claims alleging promissory fraud and the tort of outrage. We reverse and remand.

Facts and Procedural History

In January 2019, Robinson and his son, Raymond G. Robinson, Jr. ("Raymond"), sued, in the Baldwin Circuit Court, Emerald Homes, L.L.C. ("Emerald"), a mobile-home dealer located in Baldwin County, and 21st Mortgage, a Tennessee-based mobile-home mortgage lender. According to the complaint, Robinson had resided in a house situated on property that he and Raymond jointly owned in Gulf Shores. In December 2016, Robinson contracted with Emerald for the purchase of a mobile home to replace the existing house on the property, which purchase he attempted to finance by means of a loan from 21st Mortgage. Thereafter, Robinson tore down his house in preparation for the delivery of his new mobile home, an event that ultimately did not occur because, Robinson also alleged, Emerald and/or 21st Mortgage refused to complete the loan transaction.

The complaint, filed by both Robinson and Raymond, asserted the following causes of action against both Emerald and 21st Mortgage: breach of contract, "misrepresentation," suppression, and "negligence,

2

wantonness and/or outrageous misconduct." Robinson and Raymond sought to recover both compensatory and punitive damages. The trial court compelled arbitration of Robinson and Raymond's claims against Emerald. The trial court later entered a summary judgment in favor of 21st Mortgage on all of Raymond's claims. Thereafter, the matter proceeded to a jury trial solely on Robinson's remaining claims against 21st Mortgage.

According to the testimony of John Leath, Emerald's general manager at all relevant times, in late 2016 Robinson was interested in and attempted to purchase a new mobile home from Emerald. Emerald forwarded Robinson's financing application package to 21st Mortgage. 21st Mortgage denied that initial application the following day based on its conclusion that Robinson's income was insufficient to support the requested loan amount; however, it indicated that it would consider financing a lesser amount. Based on Emerald's reduction of the price of the mobile home, the inclusion of some additional income earned by Robinson, a proposed $4,000 down payment, and the contents of Robinson's then-current credit report, 21st Mortgage subsequently issued, on or around November 30, 2016, a "Pre-Approval Notice." The

preapproval notice expired, according to its terms, on January 29, 2017. It further referenced and was accompanied by certain "loan conditions." While some of the conditions indicated that they must be satisfied before closing (these are referred to in the record as the "closing conditions"), four were specified as "Required Before Funding Loan": providing verification of Robinson's down payment to Emerald by certified funds, providing a copy of his Social Security card, providing proof that any mortgage on the property had been paid in full, and providing a copy of the deed establishing his ownership of the property. These are referred to in the record as the "funding conditions." The preapproval notice also included the following language: "A change in loan amount, type of loan product, equity position, <u>credit score</u>, repayment ability, term, or the inability to satisfactorily provide or comply with the <u>Remaining Loan Conditions</u> as itemized in this letter <u>could result in</u> a higher interest rate or <u>inability to qualify</u>." (Emphasis added.)

On December 28, 2016, Robinson and Emerald executed a purchase agreement for the mobile home upon Emerald's receipt of Robinson's certified check for the down payment in the amount of $4,000. Thereafter, 21st Mortgage completed, at Emerald's request and before

4

the preapproval expiration date, several "relooks" at Robinson's application, which resulted in minor adjustments to his financing terms and to updated preapproval notices. For instance, a "relook" by 21st Mortgage at Robinson's application on January 19, 2017, slightly increased Robinson's required down-payment amount to $4,058. However, the "loan conditions" and expiration date contained in the original preapproval notice never changed, including the warning that the failure to comply with the loan conditions or a change in Robinson's credit history could result in a denial of financing.

Additional instructions from 21st Mortgage dated January 23, 2017, requested proof of Robinson's income, proof of Robinson's payment of the increased down-payment amount of $4,058, and a clear photocopy of Robinson's identification. In response, Emerald provided income verification and copies of Robinson's driver's license and Social Security card. On January 25, 2017, in response to a request generated by 21st Mortgage the previous day, Emerald also provided a copy of Robinson's 2015 tax return and a letter bearing his signature, which read as follows: "To whom it may concern, This letter is to verify that my previous home was demolished and removed from [my] property…. I do not have an

open mortgage for the above-mentioned property." According to Leath, at that point Emerald had purportedly provided all requested information and Robinson's loan was "[r]eady to close."[1]

As of January 25, 2017, 21st Mortgage agreed that Robinson had satisfied all of its "closing conditions." Thus, despite the fact that it still needed to verify his "down payment [of] $4,058; proof of current home sold [sic]; and copy of the deed," at that time, Lisa Ryan, the 21st Mortgage credit manager in charge of Robinson's file, made an entry on Robinson's application indicating that it needed a valuation report -- a federally mandated notice prepared by a third party, which provides the proposed customer with a three-day waiting period to review the mobile home that is the subject of a pending financing application. The valuation report was issued on January 26, 2017. Based on that date, according to representatives of 21st Mortgage, the earliest that Robinson's loan could have closed was January 30, 2017 -- one day after the preapproval period expired. Although 21st Mortgage had an internal

---

[1]Leath maintained that the remaining extra $58 due from Robinson at closing based on the adjusted down-payment amount was not "an issue" as far as Emerald knew because Emerald was to receive the down-payment amount and was "satisfied with receiving the [$]4,000 in hand and getting the other [$]58 at closing."

6

policy permitting a borrower to waive the valuation report in order to avoid closing delays, no waiver occurred in Robinson's case.

Robinson's loan did not close by January 29, 2017. According to Ryan, that failure was attributable to the fact that "[they] did not have all the conditions met." She explained that 21st Mortgage still needed to obtain a finalized valuation report, i.e., to allow the three-day waiting period to expire; needed to verify that the "funding conditions" had been satisfied, including obtaining proof of Robinson's payment of the full $4,058 down-payment amount to Emerald; obtaining proof that Robinson had disposed of his prior home; and obtaining a copy of his deed. Ryan denied that 21st Mortgage ever received a copy of a "mortgage release form or mortgage satisfaction" pertaining to Robinson's demolished house. There is no evidence indicating that such a document was sent to it. Ryan's testimony did indicate, however, that Robinson's letter was insufficient proof. She further indicated that 21st Mortgage would have expected the additional $58 of the down payment to be paid before it would be able to fund the loan. It is undisputed that the remaining $58 was not paid.

As also explained by 21st Mortgage's employees at trial, although

21st Mortgage had not obtained a new credit history for Robinson during the 60-day preapproval period, once a preapproval expires, 21st Mortgage treats an existing application as if it were a new application. Therefore, once Robinson's original preapproval expired, 21st Mortgage obtained, on January 30, 2017 -- the day following the expiration of the original preapproval period -- Robinson's updated credit report. That report reflected a collection matter that had been included on Robinson's original credit report at the time the preapproval notice had issued but indicated that a tax lien shown on the original credit report had been resolved and that an automobile loan also included on the original report had been satisfied. Nonetheless, for whatever reason -- and representatives of 21st Mortgage conceded there could be several -- Robinson's credit score had decreased since 21st Mortgage had issued the original preapproval notice.

According to Ryan, 21st Mortgage's approval or denial is based on inputting an applicant's information into its computer system, which computes the information based on then-current interest rates and an applicant's then-current credit rating. Thus, on January 30, 2017, 21st Mortgage issued a denial notice for Robinson's "new" loan application.

8

The denial notice indicated that the two reasons underlying 21st Mortgage's decision to deny Robinson a new loan on the prior terms were the fact that Robinson's income, although unchanged, was deemed "insufficient for [the] amount of credit requested" and the presence of a collection action or judgment on Robinson's most recent credit report. The denial notice, which did propose new terms under which 21st Mortgage would consider providing Robinson financing, apparently did not mention any decline in Robinson's credit score as a basis for the denial despite 21st Mortgage's policy requiring disclosure of the four most significant reasons for denial and despite the consistent testimony of its employees that "[t]he whole thing on this [loan denial] was his credit score dropped …."

Although Emerald tried to renegotiate the loan terms with 21st Mortgage on Robinson's behalf, it was unsuccessful. The record suggests that, in order to provide financing, 21st Mortgage would have, as of January 2017, required that Robinson make either a 15% or a 20% down payment but that Robinson was able, at most, to make a 10% down payment. He thus opted not to pursue further financing and, instead, ultimately purchased a travel trailer in which to reside on his property.

9

Raymond, Robinson's son, indicated that, because Robinson did not have an email account, he received the loan-related correspondence from Emerald whenever additional documentation from Robinson was requested, which, he said, he printed out and relayed to Robinson. He also testified that, after the demolition of Robinson's existing house, Robinson had moved in with Raymond's family for what they believed would be a short stay pending delivery of Robinson's new mobile home. Later, however, Raymond said, Robinson informed him that "he was denied." Raymond described Robinson as "upset" and "crying" over that news and stated that Robinson was subsequently withdrawn.

Robinson also testified at trial. During his testimony, he revealed that, because of the expense associated with undertaking necessary repairs on his prior house, he had decided to look at mobile homes. After selecting a particular mobile home, Emerald completed an application on his behalf to request a loan to purchase that mobile home. Robinson indicated that he was informed that "[i]t said pre-approved." He testified that he was aware that, in order to ultimately obtain the loan, he "would have to do certain things," which things, he said, he completed over a period by providing the requested information to Emerald to provide to

10

21st Mortgage. By means of both email communications sent to Raymond and documentation provided to him by Emerald, Robinson confirmed that he had personally received copies of the preapproval notices. According to Robinson, upon having provided "[e]verything they asked [him] for," it was his understanding that 21st Mortgage would "make a loan to [him]" under the stated terms.

Robinson explained that he tore down the existing house because "[t]hey told him [he] had to tear it down to … make room for the new one" and that he signed a statement to that effect "as part of the conditions to get a loan." He clarified that this information came from Emerald. Robinson also testified that he tore down the existing house in January 2017[2] despite there being room on the property to place the mobile home even with the existing house. He estimated the value of his demolished house at $60,000. Until being notified of the denial in January 2017, Robinson testified that he was never made aware of the possibility that he would not be receiving the loan pursuant to his preapproved application. He indicated that, in preparation for the delivery of the

---

[2]A building permit in the record indicates that the house was torn down and all existing utilities were disconnected on January 12, 2017.

mobile home, he had both selected furniture and undertaken site preparations.

Robinson also confirmed that he had paid the required $4,000 down payment and denied that he had been asked to pay an additional $58. He noted, however, that "[he] had it" had he been asked to do so. Upon being informed that there was an issue regarding the loan, Robinson indicated that he contacted Emerald, but the salesperson who had assisted him no longer worked there and he was unable to speak with Leath. He further testified that he continued to reside with Raymond for several months and that the circumstances had both "hurt" and "changed" him.

At the conclusion of his evidence, Robinson's counsel moved to "amend[] [the] complaint to include a claim of promissory fraud to conform with the evidence." In response, 21st Mortgage conceded that "what they're trying to argue here is promissory fraud," but it disputed the sufficiency of the evidence as to that issue. The trial court allowed the amendment. See Rule 15(b), Ala. R. Civ. P.

Next, citing Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196 (Ala. 2008), 21st Mortgage moved for a judgment as a matter of law ("JML") in its favor on all claims. After hearing argument from both

12

parties as to each claim, the trial court granted 21st Mortgage a JML "as to all fraud claims that are not promissory fraud claims" and as to Robinson's claims alleging negligence and wantonness.

21st Mortgage subsequently rested; at that time, it renewed its motion for a JML on the remaining claims:  breach of contract, promissory fraud, and the tort of outrage.  The trial court denied that renewed motion and instructed the jury on those claims.  The jury returned a verdict in favor of 21st Mortgage on Robinson's breach-of-contract claim.  However, it returned a verdict in favor of Robinson on his promissory-fraud claim and on his tort-of-outrage claim.  It awarded him $200,000 in compensatory damages and $1,000,000 in punitive damages on the promissory-fraud claim and $780,000 in compensatory damages and $1,000,000 in punitive damages on the tort-of-outrage claim, for a total award of $2,980,000.

Following the entry of a judgment on the verdict, 21st Mortgage filed a "Renewed Motion for Judgment as a Matter of Law, Motion to Vacate the Judgment, Motion to Alter or Amend the Judgment, Motion for a New Trial, Motion for Remittitur, and/or Motion for Stay." Ultimately, after a hearing on the remittitur issue, the trial court denied

that motion in full. 21st Mortgage appeals.

Standard of Review

"When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So. 2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So. 2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So. 2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So. 2d 1126 (Ala. 1992)."

Waddell & Reed, Inc. v. United Invs. Life Ins. Co., 875 So. 2d 1143, 1152 (Ala. 2003).

Discussion

21st Mortgage raises several issues on appeal. Among them are its assertions that, because Robinson allegedly failed to submit substantial evidence in support of either his promissory-fraud claim or his tort-of-

14

outrage claim, the trial court erred in denying its motion for a JML as to each. We agree. Because of our disposition regarding those claims, we pretermit discussion of the remaining issues 21st Mortgage raises on appeal, which concern alleged errors in the verdict form, the jury's deliberations, and remittitur. See <u>Jackson Hosp. & Clinic, Inc. v. Murphy</u>, 343 So. 3d 490, 498 n.3 (Ala. 2021) (stating that the Court would pretermit discussion of remaining issues in light of the dispositive nature of another issue).

## I. Promissory Fraud

Promissory fraud requires, in addition to the elements of a traditional fraud claim, an intention by the defendant not to perform at the time the subject promise was made as well as an intent to deceive:

> "'"The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim ..., two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.'"'"

<u>Heisz v. Galt Indus., Inc.</u>, 93 So. 3d 918, 925 (Ala. 2012) (citations omitted). See also <u>Alabama River Grp., Inc. v. Conecuh Timber, Inc.</u>, 261 So. 3d 226, 245 (Ala. 2017) ("To succeed on a claim of promissory fraud,

the … plaintiffs must prove two elements in addition to the elements of misrepresentation, namely: 'proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and ... proof that the defendant had an intent to deceive.'" (quoting Ex parte Moulton, 116 So. 3d 1119, 1144 (Ala. 2013))).

> " 'The burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive. Martin v. American Medical Int'l, Inc., 516 So. 2d 640 (Ala. 1987); P & S Bus., Inc. v. South Cent. Bell Tel. Co., 466 So. 2d 928 (Ala. 1985). The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud. Purcell Co. v. Spriggs Enterprises, Inc., 431 So. 2d 515, 519 (Ala. 1983). It is well settled that "a jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud]." There must be substantial evidence of a fraudulent intent that existed when the promise was made. Martin, 516 So. 2d at 642 (quoting Purcell Co., 431 So. 2d at 519).'

> "Goodyear Tire & Rubber Co. v. Washington, 719 So. 2d 774, 776 (Ala. 1998). See also Trum v. Melvin Pierce Marine Coating, Inc., 562 So. 2d 235, 237 (Ala. 1990) ('[I]n order for a promise to constitute a fraudulent misrepresentation, there must have been at the time the promise was made an intention not to perform, and such a promise must have been made with the intent to deceive.'); Clanton v. Bains Oil Co., 417 So. 2d 149, 151 (Ala. 1982) ('A promise, to constitute fraud, must be made with the intent not to perform it.'). Evidence of consistent, but unfulfilled, promises can in some

16

cases amount to substantial evidence of an intent to deceive. Goodyear Tire, 719 So. 2d at 777; Campbell v. Naman's Catering, Inc., 842 So. 2d 654, 659 (Ala. 2002). Additionally, '[a] defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made.' Byrd v. Lamar, 846 So. 2d 334, 343 (Ala. 2002). However, misrepresentations made recklessly or innocently will not sustain an action for promissory fraud. Graham Foods[, Inc. v. First Alabama Bank], 567 So. 2d [859] at 862 [(Ala. 1990)] ('Reckless misrepresentation will not support a charge of promissory fraud.'), and City of Prattville v. Post, 831 So. 2d 622, 629 (Ala. Civ. App. 2002) (holding that, because promissory fraud required proof that the defendant did not intend to perform the act promised and had an intent to deceive, a claim of promissory fraud based on an implied or negligent representation 'could not be sustained ....')."

Southland Bank, 21 So. 3d at 1212 (emphasis added).

As it argued in support of its motion for a JML, 21st Mortgage disputes that Robinson presented evidence indicating that it "fraudulently pre-approved Robinson's loan while intending not to honor its terms." 21st Mortgage's reply brief at 25. 21st Mortgage also contends, based on the disclaimers in the preapproval notices, that Robinson cannot, as the law also requires, have reasonably relied on any alleged misrepresentation or have reasonably expected that the loan would issue without its stated conditions having been satisfied.

Here, 21st Mortgage's purported promise of a loan required

17

Robinson's satisfaction of certain conditions before 21st Mortgage became obligated to fulfill the promise. A false representation or "broken promise" is necessary to establish promissory fraud but is, alone, insufficient to prove that promissory fraud occurred:

> "While the mere failure to perform the promised act is not by itself sufficient evidence of fraudulent intent, for purposes of a promissory-fraud claim, 'the factfinder may consider that failure, together with other circumstances, in determining whether, at the time the promise was made, the promisor intended to deceive.'"

Ex parte Grand Manor, Inc., 778 So. 2d 173, 182 (Ala. 2000) (quoting Murphy v. Droke, 668 So. 2d 513, 516 (Ala. 1995)). Stated another way, promissory fraud is not established when the purported promisor was not required to fulfill the promise; in those circumstances, no promise was "broken."

In support of his claim that he presented substantial evidence of promissory fraud, Robinson responds that he demonstrated that 21st Mortgage's failure to make the loan under the terms in the original preapproval notice was not based on his failure to satisfy the accompanying conditions contained in that notice because, he says, testimony indicated that he fully met or easily could have met each at or after closing. He refers to testimony from 21st Mortgage's employees

18

suggesting that neither the expiration of the 60-day preapproval period nor the 3-day valuation period was of any real significance with regard to its ability to fund the loan under the original terms. He further notes, as evidence of "pretext" on the part of 21st Mortgage, that the change to his credit score, which, according to testimony, apparently served as the primary basis for the denial of Robinson's application after the preapproval expired, was not listed on the denial notice issued by 21st Mortgage. He argues that this omission and related testimony by 21st Mortgage's employees indicating that it was the cause of the later denial despite any actual change in Robinson's financial solvency suggested dishonesty in 21st Mortgage's treatment of him.

As in Southland, supra, there is no direct evidence in this case to suggest that, at the time it issued the preapproval notice to Robinson, 21st Mortgage had no intention to eventually fund the loan as promised in the event Robinson met all required conditions. See also Sooudi v. Century Plaza Co., 622 So. 2d 1275, 1278 (Ala. 1993) (plurality opinion) (affirming a summary judgment on the issue of promissory fraud when "[the plaintiff] presented no substantial evidence to show that [the defendant] did not intend to keep its promise if [the plaintiff] had met the

condition, which he undisputedly did not meet").  It is true, however, that "[a] defendant's intent to deceive can be established through circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made."  Byrd v. Lamar, 846 So. 2d 334, 343 (Ala. 2002).  See also Ex parte Grand Manor, 778 So. 2d at 182 ("While the mere failure to perform the promised act is not by itself sufficient evidence of fraudulent intent, for purposes of a promissory-fraud claim, 'the factfinder may consider that failure, together with other circumstances, in determining whether, at the time the promise was made, the promisor intended to deceive.'" (quoting Murphy, 668 So. 2d at 516)).

As noted, Robinson points out that the loan did not close despite his having purportedly satisfied all the "closing conditions" and contends that 21st Mortgage allegedly cited pretextual reasons for the subsequent denial of a loan at the original terms after the preapproval expired.  He cites Leath's testimony as evidence that all the closing conditions were met.  While Leath -- an employee of Emerald, not of 21st Mortgage -- provided testimony confirming his belief that, as of January 20, 2017, Emerald had provided the necessary information to 21st Mortgage, that

testimony ignores the fact that Leath was relying on a document apparently completed by Emerald that, in fact, incorrectly indicated Emerald's receipt of a down payment from Robinson in the amount of $4,058. Further, the copy of the cashier's check that Emerald submitted to 21st Mortgage at that time was actually in the amount of $4,000, rather than $4,058, as Emerald represented. The information relayed by Emerald further omitted "proof" that Robinson's mortgage had been satisfied. Instead, the information Emerald provided to 21st Mortgage included only a handwritten notation by an Emerald employee representing that Robinson did not have a mortgage and referencing an attachment to that effect -- presumably Robinson's letter -- rather than an actual, recorded mortgage cancellation or release, which 21st Mortgage indisputably never received. Finally, no deed was provided to 21st Mortgage despite Emerald's representation on the documentation suggesting that Emerald possessed a copy of the deed.[3] These failures constitute undisputed evidence that Robinson did not meet all the

---

[3]In fact, copies of both a quitclaim deed from Robinson deeding the property to himself and to Raymond with the right of survivorship as well as a "Cancellation and Release of Mortgage - Alabama" were included in the record.

21

conditions triggering 21st Mortgage's promise to perform. Although Robinson also relies on testimony from Ryan to suggest that all the "closing conditions" were, in fact, satisfied, in doing so, he ignores other testimony from Ryan suggesting that even if the "closing conditions" for Robinson's loan were fully satisfied, all the "funding conditions" were not, which testimony is confirmed by the fact that Robinson's deed, evidence of a full down payment, and a mortgage release were not sent to 21st Mortgage.

Robinson argues that any remaining funding conditions "could" have been met at closing, including the payment of the remaining $58 of the updated down-payment amount, which Leath indicated Emerald was willing to receive at closing. Robinson also suggests that documents required to fulfill the remaining loan conditions could have been produced at that time. While this "could" have happened, it demonstrates that these conditions, in fact, were not met, despite the fact that Emerald and Robinson apparently had -- or, as the record demonstrates, had access to -- the necessary documents. See note 3, supra.

Here, the evidence shows that <u>all</u> the parties to the transaction had

been working to complete Robinson's loan. There is extensive testimony of 21st Mortgage's witnesses regarding the steps taken by its employees in getting the loan ready to close. This is confirmed -- or separately demonstrated by -- the great deal of correspondence that occurred to gather the required information and is further established by the testimony of Robinson, Raymond, and Leath related to those efforts. Compare Southland Bank, 21 So. 3d at 1214 (emphasizing the lack of evidence supporting "the inference that, at the time of the promise of the loan," the lender had either an intention to deceive or to not perform, when the evidence instead established "that [the lender] actually attempted to have the loan approved").

At the deadline for closing, 21st Mortgage had still not received, as required by the preapproval notice, a copy of Robinson's deed, a copy of an actual mortgage satisfaction or release form, or proof that Emerald had received the full down-payment amount.[4] In other words, undisputed evidence demonstrates that 21st Mortgage's promise to extend the loan had not been triggered by the time the preapproval period expired. Because the conditions precedent specified in the preapproval

---

[4]Further, the valuation report remained incomplete.

notice were not fulfilled, 21st Mortgage's refusal to fund the loan under the terms in that preapproval notice breached no promise; 21st Mortgage never promised to make a loan without the conditions of that promise being fulfilled. See <u>AmerUs Life Ins. Co. v. Smith</u>, 5 So. 3d 1200, 1209-10 (Ala. 2008) (recognizing "the general rule that a plaintiff's reliance on the representations of a defendant is unreasonable when the plaintiff was in possession of documents the plaintiff could have read that were inconsistent with the statements on which the plaintiff alleges he relied").

As a final matter, we note that it appears undisputed that, after the preapproval period expired, an outside factor -- Robinson's credit score -- also changed, an event that the preapproval notice specifically disclosed <u>could result in term changes or an inability to qualify</u>. The evidence contains no representation or "promise" by 21st Mortgage to Robinson that it would offer another loan with the same terms after the preapproval period expired, especially under such circumstances. Thus, regardless of whether his decreased score was the actual basis of 21st Mortgage's subsequent denial of Robinson's "new" application, Robinson failed to timely satisfy all of 21st Mortgage's stated conditions attached

24

to the preapproval of his initial application. We find it untenable that a reasonable juror could conclude that the failure of 21st Mortgage to identify all the reasons for its denial of Robinson's "new" application in January 2017 constituted evidence indicating that 21st Mortgage, when it issued the preapproval notice, did not truly commit to conditionally funding Robinson's original loan application as promised and had the requisite intent to deceive him.

In this case, the evidence, even viewed in the light most favorable to Robinson, indicates that 21st Mortgage spent the 60-day period following Robinson's original preapproval communicating with both Emerald and with Robinson and obtaining the information required to fulfill the loan conditions. However, obtaining all of that information did not occur. Robinson represents to this Court that 21st Mortgage then "changed its position and refused to make the loan" at the original terms "for its own commercial benefit." Robinson's brief at 5. The new loan terms extended by 21st Mortgage, however, appear to have merely increased the required down payment, which all the evidence suggests Emerald would have received and which would have actually resulted in Robinson's financing a smaller amount with 21st Mortgage. At most,

25

under the new terms it proposed, 21st Mortgage would have received an increased portion of Emerald's sellers' proceeds -- or an additional $2,400. The record contains no substantial evidence suggesting that 21st Mortgage made an intentional misrepresentation to deceive Robinson and then engaged in a scheme to achieve the limited aim Robinson attributes to it. In any event, it is undisputed that all the conditions required by the preapproval notice were not met. These circumstances do not provide substantial evidence that 21st Mortgage "'had the intention not to fund'" the loan when the preapproval notice was issued or that it "'had an intent to deceive.'" See Alabama River Grp., 261 So. 3d at 245 (citation omitted). Accordingly, essential elements of Robinson's promissory-fraud claim were not proven, and the trial court erred in denying 21st Mortgage's motion for a JML on that claim. See Liberty Nat'l Life Ins. Co. v. Daugherty, 840 So. 2d 152, 156 (Ala. 2002) ("'"A judgment as a matter of law is proper … where there is a complete absence of proof on a material issue …."'" (citations omitted)).

II. The Tort of Outrage

We also hold that the trial court erred in denying 21st Mortgage's motion for a JML on Robinson's tort-of-outrage claim. At the outset, we

reiterate that the tort of outrage is an <u>extremely limited cause of action</u> and will lie in circumstances demonstrating only <u>the most egregious conduct</u>:

> "For a plaintiff to recover under the tort of outrage, she must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. <u>Green Tree Acceptance, Inc. v. Standridge</u>, 565 So. 2d 38, 44 (Ala. 1990). The conduct complained of must 'be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society.' <u>Id.</u>
>
> "This Court has previously recognized the tort of outrage in three circumstances:
>
>> "'<u>The tort of outrage is an extremely limited cause of action</u>. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, <u>Whitt v. Hulsey</u>, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, <u>National Sec. Fire & Cas. Co. v. Bowen</u>, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, <u>Busby v. Truswal Sys. Corp.</u>, 551 So. 2d 322 (Ala. 1989). See also Michael L. Roberts and Gregory S. Cusimano, <u>Alabama Tort Law</u>, § 23.0 (2d ed. 1996).'
>
> "<u>Potts v. Hayes</u>, 771 So. 2d 462, 465 (Ala. 2000). However … this Court has not held that the tort of outrage can exist in only those three circumstances:
>
>> "'That is not to say, however, that the tort of outrage is viable in only the three circumstances

27

noted in Potts. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. See O'Rear v. B.H., 69 So. 3d 106 (Ala. 2011). It is clear, however, that the tort of outrage is viable only when the conduct is "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" Horne v. TGM Assocs., L.P., 56 So. 3d 615, 631 (Ala. 2010) (quoting [American Road Service Co. v.] Inmon, 394 So. 2d [361, 365 (Ala. 1980)] ).'

"Little v. Robinson, 72 So. 3d 1168, 1172-73 (Ala. 2011) ...."

Wilson v. University of Alabama Health Servs. Found., P.C., 266 So. 3d 674, 676-77 (Ala. 2017) (original emphasis omitted; emphasis added).

Although, as noted in Wilson, this Court indicated that the factual scenarios allowing recovery for the tort of outrage -- or the intentional infliction of emotional distress -- are not necessarily limited to those found in prior caselaw, further expansion is not required under the present facts. In fact, this Court, in Green Tree Acceptance, Inc. v. Standridge, 565 So. 2d 38 (Ala. 1990), already once declined, in the arena of mobile-home-related lending, to extend the scope of the tort of outrage

28

despite recognizing the "oppressive collection practices" employed by the lender in that case. 565 So. 2d at 45.

While the outcome of a failed loan transaction can be unfortunate for a borrower, the lack of success in closing Robinson's loan, especially with no intent to deceive on the part of 21st Mortgage, was not so extreme in degree as to go "'""beyond all possible bounds of decency[] and to be regarded as atrocious and utterly intolerable in a civilized society.'"'" Wilson, 266 So. 2d at 677 (citations omitted). Further, "[t]he evidence did not show the level of conduct our cases have recognized to be actionable as outrageous." Potts v. Hays, 771 So. 2d 462, 465 (Ala. 2000). Thus, as with Robinson's promissory-fraud claim, even viewing the evidence in the light most favorable to him, nothing suggests the extreme or outrageous conduct necessary to survive 21st Mortgage's motion for a JML as to the tort-of-outrage claim.

## Conclusion

As indicated above, 21st Mortgage was entitled to a JML on Robinson's claims of promissory fraud and the tort of outrage. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion. As explained above,

our holding pretermits the need to address the remaining arguments 21st

Mortgage advances on appeal.

REVERSED AND REMANDED.

Parker, C.J., and Bryan, Mendheim, and Mitchell, JJ., concur.